UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
THOMAS JAMES JADLOWE,                       )
          Plaintiff,                        )
                                            )
     v.                                     )
                                            )    Civil Action No. 05-CV-10516-LTS
TOWN OF DARTMOUTH, LEONARD                  )
GONSALVES, MICHAEL J. GAGNE,                )
DONALD A. PERRY, SCOTT E. SILVIA,           )
JOEL S. REED AND                            )
JEANNE E. LENTINI,                          )
          Defendants.                       )
_____     )


MEMORANDUM AND ORDER

SOROKIN, M.J.

     Defendants[1] filed a motion to dismiss the Complaint under Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  For the reasons discussed below, I hereby GRANT

Defendants' motion in part and DENY the motion in part.

I.     BACKGROUND

     In 1942, Plaintiff Thomas Jadlowe ("Jadlowe,")'s father in law, Manuel Oliveira,

acquired real property in Dartmouth, Massachusetts (the "Town"). (Complaint at ¶ 4.)  The

property had two structures: the main house and a barn that was later converted into an art studio/

apartment. (Id.)

     On March 16, 2001, Jadlowe acquired title to his father-in-law's property; five days later,

_____
     [1]   Defendant Jeanne Lentini is not a party to the Motion to Dismiss.  Accordingly,
throughout this memorandum, "Defendants" refers only to the Town of Dartmouth, Leonard
Gonsalves, Michael Gagne, Donald Perry, Scott Silvia and Joel Reed.

Jadlowe applied for a building permit to remodel the house.  (Id. at ¶ 6.) At that time, defendant Joel Reed was the town's Assistant Zoning Enforcement Officer ("ZEO").  He issued Jadlowe's requested building permit on November 20, 2001.  (Id. at ¶ 8.)

"Sometime in December 2001," defendant Leonard Gonsalves, a town Selectmen, allegedly contacted Reed about Jadlowe's house.  (Complaint at ¶ 9.)  Gonsalves apparently believed that Jadlowe's remodeling project violated the Town's zoning by-laws.  (Id.)  Reed did not believe that Jadlowe's project violated the Town's bylaws, based on a policy that the Town had adopted in December 1998 (the "1998 policy") which exempted structures existing before October 26, 1993 from a number of zoning requirements.  Jadlowe states that his building permit was issued correctly under that policy.  (Id.)

Gonsalves was familiar with Jadlowe's property: in 1998, as Plaintiff's son, Marc Jadlowe, and his grandfather Manuel Oliveira were remodeling the rear structure into an apartment/art studio, Gonsalves had intervened.  (Complaint at ¶ 5.)  He required Oliveira and Marc Jadlowe to build a structure connecting the house and the apartment before conducting any renovation on the apartment. (Id.)  Oliveira and Jadlowe complied with Gonsalves' mandate and completed the project.  (Id.)

After speaking with Reed about Jadlowe's 2001 project, Gonsalves allegedly contacted defendant Michael Gagne, the Town's Executive Administrator, in order "to pressure the Town Counsel to issue an opinion that rejected the December 1998 policy." (Complaint at ¶ 10.) Plaintiff alleges that, after Gagne spoke with Gonsalves, the town's Select Board had one or more executive sessions "to put pressure on the then ZEO ([David] Silveira) to stop the project." (Id.)  On March 19, 2002, after Jadlowe had already completed 65% of construction, Silveira

2

issued a stop-work order instructing Jadlowe to stop construction and to remove any construction already completed.  (Id. at ¶ 11.)

Jadlowe fought the stop-work order by filing a complaint against the Town of Dartmouth and David Silveira in Massachusetts Superior Court; both he and his son Marc were plaintiffs to the action.  (Complaint at ¶ 12; Plaintiff's Opposition to the Motion to Dismiss ("Plaintiff's Opposition"), Ex. A (Complaint, Bristol Superior Court Docket No. CV-2002-00480 B)("the First Complaint."))  The court held a preliminary hearing, after which it issued a preliminary injunction enjoining Jadlowe from continuing construction on the house, while also enjoining the Town from demolishing any existing construction.  (Complaint, Ex. B (Rulings and Orders, No. 02-0480 (Mass.Sup.Ct. (Bristol) May 3, 2002))).  The court also ordered the parties to exhaust their administrative remedies with the Town's Zoning Board of Appeals ("ZBA"), and the court postponed its proceedings to allow the parties to exhaust any such remedies.  (Id. at ¶¶ 4, 5.)

Following the court's order, Jadlowe pursued his remedies with the ZBA by filing an appeal of Silveira's stop-work order, as well as an application for a special permit that would allow construction on the house to continue.  (Complaint at ¶ 13.)  The ZBA held hearings on these requests, and upheld the stop-work order while denying Jadlowe's request for a special permit.  (Id.)

Jadlowe then appealed the ZBA's decision by filing a new complaint against the ZBA and its board members Joseph Cosentino, William Whipp and Margaret Sweet, in Massachusetts Superior Court.  (Plaintiff's Opposition, Ex. C (Complaint, Bristol Superior Court Docket No. CV-2002-1048)(the "Consolidated Complaint")).  The new complaint was consolidated with the Jadlowes' original action against the Town and Silveira.  (Id.)

3

Jadlowe waived his right to a jury trial and in July 2003, a trial took place before Judge
Marsh of the Superior Court. (Complaint at ¶ 15.)  The court then issued a 46-page decision in
the consolidated actions.  First, the court determined that David Silveira was not pressured or
coerced by the Town to issue the stop-work order and that "[t]he plaintiffs were not singled out
for special treatment by the Town" as "[t]here was no intent or scheme to harass them."
(Memorandum in Support of Defendants' Motion to Dismiss ("Defendants' Memorandum"), Ex.
2 at pg. 30 (Findings of Fact, Rulings of Law and Order of Judgment, No. 02-01048,
Mass.Sup.Ct. (Bristol) October 30, 2003).[2]  The court also found, however, that Silveira's stop-
work order was invalid because Silveira had issued the order "solely in his perceived self-
interest" and without taking into account any zoning considerations.  (Id. at 33.)  The court thus
ordered that the stop-work order be vacated.  (Id. at 44.)

The court also ordered Jadlowe to delay any further construction on the house until
December 1, 2003 in order to give the Town time to initiate any zoning enforcement actions
against Jadlowe, if necessary.  (Id. at 45.)  The court did not consider the issues raised by the
second action, which was later dismissed without prejudice on November 28, 2003.  (Plaintiff's
Opposition, Ex., E).  Jadlowe appealed the superior court's decision, which appeal is pending.
(Complaint at ¶ 15.)

On November 24, 2003, Reed issued a new stop-work order enjoining Jadlowe from any
further construction on the house.  (Complaint at ¶ 16.)  Jadlowe alleges that defendant Donald
Perry, the Town's Planning Director, furthered the conspiracy to deprive Jadlowe of his property

---

[2]  Marc Jadlowe was a plaintiff in the first complaint, but not the second; nonetheless, the
superior court refers to "Plaintiffs" due to the consolidation of the complaints.

4

rights by "encourag[ing] the Planning Board to issue a letter to Reed to issue a stop order." (Id. at ¶ 28.) Jadlowe appealed Reed's order to the State Building Code Appeals Board ("SBCAB") because "he did not believe that he could get a fair hearing before the ZBA." (Id. at ¶ 17.) This appeal is also currently pending. (Id.)

In an effort to reach a resolution, defendant Michael Gagne, representing the Town, approached Jadlowe to discuss the possibility of a special permit. (Complaint at ¶ 18.) Pursuant to these conversations, the Town prepared an application for a special permit on Jadlowe's behalf and submitted it to the ZBA for review. (Id. at ¶ 19.) After a hearing on November 16, 2004, the ZBA granted Jadlowe a Special Permit and Variance ("combined permit"), allowing him to continue with his remodeling project. (Defendants' Memorandum, Ex. 4 (Decision of the Zoning Board of Appeals, Case # 2004-69)).

Thereafter, Lisa and Maryanne Frates, abutters to Jadlowe's property, filed a complaint in superior court appealing the ZBA's decision to issue the combined permit. (Id. at ¶ 20.) The Frates are seeking to void the combined permit; their suit is pending. (Id.) Jadlowe alleges that Gagne knew or should have known, when he filed the special permit papers for Jadlowe, that the Frates would appeal Jadlowe's special permit. (Id. at ¶ 21.) Jadlowe further alleges that defendant Scott Silvia, Chairman of the ZBA, subsequently "joined the conspiracy to prevent Jadlowe from completing his project, by attempting to impeach his own vote to grant Jadlowe relief from the zoning bylaw" and by helping the Frates in their suit. (Complaint at ¶ 31.)

Jadlowe brings this action under 42 U.S.C. § 1983, alleging that Defendants denied him his constitutional right to equal protection of the law.[3] (Complaint at ¶ 1.) Plaintiff contends that

---

[3] Plaintiff points to defendant Silvia's property on 11 Old Westport Road and other

Defendants' actions were motivated by animus, stemming from critical political statements that his son Marc Jadlowe had made towards defendants Gonsalves and Gagne.  (Id. at ¶¶ 1, 23.)

Jadlowe raises two claims against Defendants.  Claim One is for damages arising out of Defendants' alleged violation of § 1983, while Claim Two is for equitable relief, in which Jadlowe seeks a declaratory judgment that will allow him to proceed with his residential remodeling project.  (Id. at ¶¶ 34- 39.)

Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing first that Claim One should be dismissed because: 1) it is barred by res judicata and 2) Jadlowe failed to allege any deprivation caused by the defendants.  (Defendants' Memorandum at pgs. 8-11.)  Defendants further argue that Claim Two for equitable relief should be dismissed because: 1) Jadlowe failed to exhaust his administrative remedies and 2) the relief Jadlowe requests would violate principles of federalism.  (Id. at pgs. 12-16.)


II.    DISCUSSION

A complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff, as the non-moving party.  Pejepscot Indus. Park v. Maine Cent. R.R., 215 F.3d 195, 197 (1st Cir.2000); Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).  However, the Court need not credit "bald assertions, unsupportable conclusions,

---

properties in Dartmouth for the proposition that he was denied zoning relief that was granted to others.  (Complaint at ¶ 22 and Ex. D at ¶¶ 1-3, 22-23 (Verbatim Minutes of Executive Session of March 11, 2002)).

and opprobrious epithets" used in a complaint.  <u>Chongris v. Bd. of Appeals</u>, 811 F.2d 36, 37 (1st

Cir.1987).

When a defendant brings a Motion to dismiss on the basis of both rules 12(b)(1) and

12(b)(6), the Court ordinarily considers the 12(b)(1) motion first.  <u>Northeast Erectors Ass'n v.</u>

<u>Secretary of Labor</u>, 62 F.3d 37, 39 (1st Cir.1995).  The order in which the motions are considered

is not simply a matter of form, as "Different consequences flow from dismissals under 12(b)(1)

and 12(b)(6): for example, dismissal under the former, not being on the merits, is without res

judicata effect."  <u>Id.</u>  Therefore, the Court will first address the issue of subject matter jurisdiction

under 12(b)(1) and then the applicability of 12(b)(6).

**A.    Motion to Dismiss under Rule 12(b)(1)**

The complaint states that "[t]his court has jurisdiction in this action because the Plaintiff

is making a claim for relief under 42 USC 1983 for a violation of the Plaintiff's rights under the

United States Constitution."  (Complaint at ¶ 1.)  Federal district courts have subject matter

jurisdiction over claims brought under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1343(3).  A

court may dismiss such a claim for lack of subject matter jurisdiction, however, "where the

alleged claim under the Constitution or federal statute[] clearly appears to be immaterial and

made solely for the purpose of obtaining jurisdiction or where such a claim is wholly

insubstantial and frivolous."  <u>Bell v. Hood</u>, 327 U.S. 678, 682-683 (1946).  On their face,

Jadlowe's § 1983 claims are not so devoid of substance as to merit dismissal for lack of subject

matter jurisdiction.  However, other grounds for lack of subject matter jurisdiction exist.

*1.    Failure to Exhaust Administrative Remedies*

Defendants argue that Plaintiff's second count seeking equitable relief should be

dismissed because, among other reasons, the "plaintiff has failed to exhaust his administrative remedies."[4]  In support of this contention, Defendants rely on Massachusetts state cases that generally stand for the proposition that an aggrieved party must exhaust administrative remedies before seeking judicial review of zoning decisions.[5]  (Defendants' Memorandum at pgs. 12-13.) Unlike the plaintiffs in the cited Massachusetts cases, who were all suing under M.G.L. c. 40A, § 17, however, Plaintiff here brings his action under 42 U.S.C. § 1983.  As the Supreme Court held in Patsy v. Bd. of Regents, administrative exhaustion is not a prerequisite for § 1983 actions. 457 U.S. 496, 500-01 (1982).

At oral argument, Defendants argued that the First Circuit tempered Patsy in its decision Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27 (1st Cir.2004), cert denied, 543 U.S. 872 (2004), so that exhaustion would be a requirement here.  Though Maymo does address the interplay between related state and federal litigation, it does so in the context of the Younger doctrine, i.e. whether a federal court should wade into an "ongoing" state proceeding under to principles of federalism.  Maymo, 364 F.3d at 31.  Rather than modifying Patsy's § 1983-specific rule that exhaustion is not required under that statute, Maymo simply extends the Younger

---

[4]  Claim Two asks the Court to "order the Defendant Reed to revoke his Stop Order and to enter an order on the building permit that the permit is extended to a period fixed by the court to allow for the completion of the project."  (Complaint at ¶ 38.)  Claim Two further asks that this "court retain jurisdiction for the few months it will take to complete the project and to ensure that inspections are completed promptly."  (Id. ¶ 39.)

[5]  Among the cases cited are Cumberland Farms, Inc. v. Zoning Bd. Of Appeals of Walpole, 61 Mass.App.Ct. 124, 129 (2004) (stating that "failure to exhaust administrative remedies is jurisdictional in nature, and the court may not hear the matter if it was not appealed to the local board of appeals") and Garabedian v. Westland, 59 Mass.App.Ct. 427, 432 (2003) (stating that "[o]rders of public officials are not generally appropriate subject matter for declaratory judgment, if, as in the case of a building inspector, there are administrative remedies to exhaust").

abstention doctrine, which is discussed below.  Accordingly, Defendants' argument that Jadlowe failed to exhaust his state remedies fails.

    2.    *Younger Doctrine*

Defendants next argue that the Court should abstain from considering Claim Two under the Younger doctrine. The Younger abstention doctrine "is a court-made rule of abstention built around the principle that, with limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." Maymo, 364 F.3d at 31.  The Court agrees that the Younger doctrine applies and dismisses Claim Two in its entirety.

The doctrine derives from the Supreme Court's decision in Younger v. Harris, 401 U.S. 37 (1971) and originally applied narrowly to state court criminal actions.  Many cases have expanded upon the principles set forth in Younger, however.  See, e.g., Huffman v. Pursue, Ltd., 420 U.S. 592 (1975)(applying Younger in a civil case where an action brought in state court under a public nuisance statute was similar to a criminal proceeding); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433 (1982) (applying Younger to an administrative proceeding that was "judicial in nature"); Samuels v. Mackell, 401 U.S. 66 (1971) (extending Younger to declaratory judgments).  As the Supreme Court stated in Middlesex County Ethics Commission, "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." 457 U.S. at 432.

The Younger doctrine applies when there is: "(1) an ongoing state judicial proceeding, instituted prior to the federal proceeding (or, at least, instituted prior to any substantial progress in the federal proceeding), that (2) implicates an important state interest, and (3) provides an

adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit." Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 638 (1st Cir.1996). The applicability of each element is examined infra.

Currently, Jadlowe is involved in several state court actions. First, he is a party defendant in the suit brought by the Frates who seek to void the combined permit, thereby halting construction on Jadlowe's house. Additionally, Jadlowe has appealed the state court decision that vacated the first stop-work order but allowed the Town time to institute the second stop-work order. Jadlowe has also appealed the second stop-work order to the SBCAB in a state administrative action. Given the multitude of ongoing state judicial proceedings, which were all instituted prior to the federal proceeding, the first requirement is clearly met.

The importance of zoning and land use regulations to state and local interests satisfies the second prong of Younger. The Supreme Court has noted that the "[r]egulation of land use [is] a function traditionally performed by local governments." Hess v. Port Authority Trans-Hudson Corporation, 513 U.S. 30, 44 (1994). Other courts have reached the same conclusion. See Roberts v. Southwestern Bell Mobile Systems, Inc., 29 Mass. 478, 487 (1999)("zoning and local land use regulation is one traditionally within the purview of State and local government"); Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 557 (1954)("[z]oning has always been treated as a local matter"); PrimeCo Personal Communications, L.P. v. Fox Lake, 26 F.Supp.2d 1052, 1062 (N.D. Ill.1998) ("issues of land use are distinctly local and therefore fall on the state-side of the federalism divide").

Finally, given the "basic presumption that state courts are fully capable of safeguarding federal constitutional rights," this Court sees no reason why Jadlowe would not be able to raise

his § 1983 equal protection claims in the state court proceedings.  Brooks v. New Hampshire

Supreme Court, 80 F.3d 633, 639 (1st Cir. 1996).  For example, Jadlowe can file a cross-claim or

third-party claim in the Frates' lawsuit and raise his constitutional claims in state court.

Moreover, Jadlowe has (or had) opportunities to do the same in the lawsuits he filed in state

court.  For the purposes of Younger, "it is sufficient . . . that constitutional claims may be raised

in state-court judicial review of the administrative proceeding."  Ohio Civil Rights Comm'n v.

Dayton Christian Sch., Inc., 477 U.S. 619, 629 (1986).  Jadlowe has presented no arguments to

persuade this Court that the ongoing state proceedings bar federal constitutional claims.  As such,

the third element of Younger is satisfied.

　　 The Younger doctrine applies in this case.  If this Court were to grant injunctive relief to

Jadlowe allowing him to finish his house, such relief would interfere with the state courts' and

administrative agency's ability to regulate and enforce zoning laws.  Therefore, the Court

dismisses Jadlowe's claims for injunctive relief (Claim Two) in its entirety.[6]

## B.    Motion to Dismiss under Rule 12(b)(6)

For Rule 12(b)(6) motions, when "matters outside the pleadings are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and disposed of

as provided in Rule 56."  Fed. R. Civ. P. 12(b).  However, "courts have made narrow exceptions

for documents the authenticity of which are not disputed by the parties; for official public

---

[6] Unlike other circumstances in which federal courts abstain, application of the Younger doctrine "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts."  Gibson v. Berryhill, 411 U.S. 564, 577 (1973).  Therefore, the Court chooses to dismiss Claim Two in the interests of comity because there is no indication that the state proceedings are not capable of properly handling the federal claim presented by plaintiff and providing plaintiff with the relief he seeks.  See id.

records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the

complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). "[T]he proper approach to Rule

12(b)(6) conversion is functional rather than mechanical," and the conversion is "quintessentially

within the purview of the district court's sound discretion." Beddall v. State St. Bank & Trust

Co., 137 F.3d 12, 17 (1st Cir.1998). Both parties attached documents outside the pleadings;

neither party questioned the other party's use of the outside documents. Therefore, the Court

opts to forgo conversion to summary judgment and considers the 12(b)(6) motion on the basis of

information in the complaint, the documents attached thereto as exhibits, and the public records

attached to the parties' briefs.

In Claim One, Plaintiff brings a claim under 42 U.S.C. § 1983, alleging an equal

protection violation by the defendants. Essentially, Jadlowe alleges that defendants Gonsalves,

Gagne, Perry, and Silvia "denied the plaintiff the use of his home and treated him differently than

others similarly situated."[7]  (Complaint at ¶ 35.)  Plaintiff does not allege that he is a member of a

protected class but instead uses the "class of one" approach, relying on Willowbrook v. Olech,

528 U.S. 562, 564 (2000). Defendants raise three arguments for dismissing Claim One.

1.    *Zoning claims As Constitutional Violations*

At the hearing, Defendants raised an argument based on Licari v. Ferruzzi, 22 F.3d 344

(1st Cir.1994), contending that § 1983 substantive due process claims regarding zoning issues

should generally be dismissed.  While the First Circuit did note in Licari that "rejections of

development projects and refusals to issue building permits do not ordinarily implicate

substantive due process," 22 F.3d at 349, this case does not involve a claim for violation of

---

[7] Defendants Reed and Lentini are not included in Claim One.

12

substantive due process, but instead involves equal protection. Unlike the defendants in <u>Licari</u>, Defendants here are accused of actions based on illegitimate animus. The situation is more analogous to the one in <u>Tapalian v. Tusino</u>, 377 F.3d 1 (1st Cir.2004), which Plaintiff referred to during oral arguments. Therefore, Defendants' <u>Licari</u> argument fails.

## 2.    *Res Judicata*

Defendants next argue that the claim for damages should be dismissed on the basis of res judicata, in this case, claim preclusion.[8] (Defendants' Memorandum at pg. 10.) "Claim preclusion forecloses the litigation of all matters that could have or should have been litigated in a prior action." <u>Charlette v. Charlette Bros. Foundry, Inc.</u>, 59 Mass. App.Ct. 34, 44 (2003). According to Defendants, the state superior court has already decided upon "the merits of plaintiff's contention that his Equal Protection rights had been violated." (Defendants' Memorandum at pg. 10.) Because "[p]laintiff's contention in Count I that Town officials violated his Equal Protection rights is no more than a reiteration of the claim that was considered," Defendants argue that the federal claim is barred. (<u>Id.</u>) For the following reasons, Defendants are partly correct with regard to claim preclusion.

"By federal statute, 'judicial proceedings of any court of any . . . State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession.'" <u>Cruz v. Melecio</u>, 204 F.3d 14, 18 (1st Cir.2000) (<u>quoting</u> 28 U.S.C. § 1738). "This mandate 'requires federal courts to give the same preclusive effect to state court judgments that those judgments

---

[8] Though they use the term "res judicata," Defendants only cite cases involving claim preclusion; none of the cases cited concern issue preclusion.

13

would be given in the courts of the State from which the judgments emerged.'" Id. (quoting

Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982)).  "The fact that a suit raises a

federal question or seeks to vindicate federal constitutional rights does not blunt the force of this

command."  Id.  The Court looks to Massachusetts' state law to determine whether or not Claim

One is barred by res judicata, because the prior judicial proceedings took place in Massachusetts

Superior Court, and "state law, with all its wrinkles, applies in deciding the res judicata effect of

a state court judgment in a federal court."  Id.

        Under Massachusetts law, claim preclusion "makes a valid, final judgment conclusive on

the parties and their privies, and bars further litigation of all matters that were or should have

been adjudicated in the action."  Heacock v. Heacock, 402 Mass. 21, 23 (1988).  A prior claim

can have preclusive effect even if "the claimant is prepared in a second action to present different

evidence or legal theories to support his claim, or seeks different remedies."  Id.  "Three elements

are essential for invocation of claim preclusion: (1) the identity or privity of the parties to the

present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the

merits."  DaLuz v. Dep't of Correction, 434 Mass. 40, 45 (2001).  Plaintiff challenges each

element.

        (i) Identity of Parties.  The first element of claim preclusion entails an "identity or privity

of the parties."  DaLuz, 434 Mass. at 45.  Claim One in this action was brought against the Town

and the following defendants in their individual capacities; Gonsalves, a Town selectman;

Gagne, the Town's Executive Administrator; Perry, the Town's Planning Director; and Silvia,

Chairman of the Town's ZBA.  Since Thomas Jadlowe and the Town of Dartmouth are both

parties in this case and were also parties in the state case, identity is clearly established with

14

respect to these parties.[9]

None of the individual municipal defendants were parties to the state action, however.[10] Res judicata applies "to nonparties only where a person's interest was represented by a party to the prior litigation." Mongeau v. Boutelle, 10 Mass. App. Ct. 246, 249- 50 (1980). In other words, Defendants would have to show a "sufficient legal identity" between them and the defendants in the prior lawsuit.[11] Rudow v. Fogel, 376 Mass. 587, 589 (1978). Moreover, "the legal identity required for claim preclusion in a multiparty context requires 'a very close relationship bordering on a complete identity of interest between the individuals in question.'" Mongeau, 10 Mass. App. Ct. at 252 (quoting Vestal, Claim Preclusion and Parties in Privity, 60 Iowa L. Rev. 973, 976 (1975)). Defendants argue that "there is sufficient identity between the parties in the two suits" because "[t]he actions of all Town officials connected to the issuance of the stop-work order were considered by the Superior Court." (Defendants' Memorandum at pg. 11.) In light of the above standards, the Court does not agree.

---

[9] At the hearing, Plaintiff argued that the Town of Dartmouth was not a party to the state case, claiming that the Zoning Board of Appeal of the Town of Dartmouth was the actual party. Jadlowe named the Town as a defendant in his first complaint, however. (Plaintiff's Opposition, Ex. A.) That complaint was consolidated with Jadlowe's second action against the ZBA and various individuals. The superior court's decision addressed the actions giving rise to Jadlowe's first complaint and identified the Town as a defendant. (Defendants' Memorandum, Ex. 2.) Clearly the Town of Dartmouth was a party to the state court proceedings.

[10] The defendants in the consolidated superior court action were the ZBA and its members Joseph Cosentino, William Whipp, and Margaret Sweet, as well as David Silveira in his official capacity as the Town Building Commissioner and ZEO. All of these individual defendants were municipal workers for the Town of Dartmouth.

[11] The Rudow case involves issue preclusion. 376 Mass. at 591. Both Mongeau and Sarvis v. Boston Safe Deposit & Trust Co. rely upon Rudow in discussing the identity of parties for the purposes of claim preclusion, however. 10 Mass. App. Ct. at 252; 47 Mass. App. Ct. 86, 100 (1999).

The fact that the superior court examined the actions of all Town officials who are parties in this case does not mean that all Town officials have sufficient legal identity with the defendants in the superior court case.  Defendants here have not shown that they "controlled the defense in the Superior Court litigation."  Roche v. Roche, 22 Mass. App. Ct. 306, 310 (1986). Neither have they indicated that they played a "role directly or vicariously in the Superior Court proceeding."  Id.  Without such substantial involvement, Defendants cannot establish sufficient legal identity on the basis of their participation in the superior court proceedings.

Additionally, Defendants cannot establish sufficient legal identity even on the grounds that they worked for the Town of Dartmouth, because their relationship with the Town does not border on a complete identity of interest.  Some examples of relationships that may have sufficed include a subrogee's relationship to the obligee in seeking reimbursement of payment and a beneficiary's relationship to another beneficiary under the same trust.  See, e.g., Dwight v. Dwight, 371 Mass. 424 (1976) (holding that beneficiaries were barred by a prior claim brought by a guardian ad litem representing other beneficiaries of the same trust); Commerce Ins. Co. v. Sentry Ins., No. 9605058, 1998 WL 1181776 (Mass. Super. June 3, 1998) (holding that a claim was barred because an insurance company and its client were in privity).  However, it is unlikely that Massachusetts courts would see the Town officials' relationship to the Town as creating an identity of interest, especially because the town officials are sued in their individual capacities. See Carta v. Town of Fairfield, No. 91- 2248, 1992 WL 69332, at *3, n. 4 (1st Cir.Apr. 8, 1992) (applying Maine law and noting that "[a town's] Board members in their personal and individual capacity ... are not in privity with the town"); HEA v. HEI, 915 F.2d 739, 750 (1st Cir.1990) (holding that a primary shareholder and affiliate is not in privity with a corporation for claim

16

preclusion); <u>Mongeau</u>, 10 Mass. App. Ct. at 254 n. 10 (holding that joint tortfeasors are not in privity for claim preclusion).

    *(ii) Identity of Claims.*  The second prong for claim preclusion requires an identity of the cause of action, i.e. an identity of claims.  "A claim is the same for res judicata purposes if it is derived from the same transaction or series of connected transactions." <u>St. Louis v. Baystate Medical Center, Inc.</u>, 30 Mass. App. Ct. 393, 399 (1991).  "'What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically.'" <u>Id.</u> (<u>quoting</u> Restatement (Second) of Judgments § 24(2)).  Plainly the proceedings in superior court and the complaint brought in this Court arise out of the same transaction or series of connected transactions.

    In the superior court case, Jadlowe brought his first complaint in response to David Silveira's issuance of the first stop-work order.  Jadlowe basically asked the superior court to review the legality of Silveira's stop-work order and to issue any injunctions as may be necessary to complete the house.  Accordingly, the superior court considered the events leading up to the first stop-work order in coming to its decision.

    At the hearing, Plaintiff's counsel argued that he did not have a chance to raise his equal protection claim in state court.  This argument fails, however, because Jadlowe did raise the claim that he had been treated unequally by the issuance of the first stop-work order, in his allegation that "Plaintiffs had been singled out for special treatment" (Plaintiff's Opposition, Ex. A at ¶ 35).  The superior court addressed these allegation, finding that "[t]he plaintiffs were not singled out for special treatment by the Town."  (Defendants' Memorandum, Ex. 2 at pg. 30.)  The court later explicitly "reject[ed] the plaintiffs' argument that any local enforcement action . .

. would *violate the equal protection clause of the Federal or Massachusetts Constitution.*"  (Id. at pg. 42, n. 26.)(emphasis added)  Plaintiff clearly had the information and opportunity to raise his unequal treatment claims and those claims were addressed; thus, such claims are precluded here. See Charlette, 59 Mass. App.Ct at 44.[12]

Insofar as the instant case arises out any injuries that may have been caused by the first stop-work order, even if such events happened after the superior court decision, it is barred from raising such claims.  Regarding the second stop-work order and the third-party lawsuit brought by the Frates, however, there is not an identity of the cause of action.  Therefore, claim preclusion does not apply with respect to those transactions.

*(iii) Final Judgment.*  Satisfaction of the third element for claim preclusion requires that there be a final, valid judgment on the merits in the superior court case.  Plaintiff contends that the superior court case is not "final" because the matter is on appeal in the Massachusetts Court of Appeals.  Plaintiff is incorrect; under Massachusetts law, preclusion does not require that appeals be exhausted in order for a judgment to be "final."  See O'Brian v. Hanover, 427 Mass. 194, 200 (1998)(discussing same element for issue preclusion, finding "a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal"). The superior court's decision declaring the first stop-work order void is a "prior final judgment on the merits," of the superior court case, which judgment precludes any additional adjudication of the claims in that

---

[12]  The superior court did refuse to hear any allegation that "the Bylaw, the Building Code or chapter 40A is unconstitutional because it permits revocation of a building permit in violation of the due process clause of a *denial of due process*," on the procedural grounds that, to the extent Jadlowe was making such an argument, he had failed to show that he had notified the Attorney General of such an action as required by Massachusetts law.  (Defendants' Memorandum, Ex. 2 at pg. 42, n. 26.)(emphasis added).

case by this Court.  <u>DaLuz</u>,  434 Mass. at 45; <u>see</u> <u>Shaw v. First Marathon, Inc.</u>, 799 N.E.2d 158,

*3 (Mass.App.Ct.  2003)(affirming Commissioner's decision as "final" for claim preclusion

"even thought that decision is currently being appealed.").

    For the reasons above, Plaintiff's Claim One for violations of 42 U.S.C. § 1983 against

the Town of Dartmouth is precluded, though only for the activities leading up to the first stop

work order.  Plaintiff's Claim One is not precluded as to the individual municipal defendants

under res judicata, however, because they were not parties, nor in privity with any parties, in the

superior court action.

    *3.*    *Failure to Allege a Deprivation*

    Defendants next argue that Claim One seeking damages should be dismissed because

Plaintiff fails to allege that any alleged deprivation was caused by the defendants.  Under § 1983,

Jadlowe must sufficiently allege that (1) "the defendant has deprived him of a right secured by

the 'Constitution and laws' of the United States," and that (2) "the defendant acted 'under color

of law.'"  <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 150 (1970).  Jadlowe alleges that

Defendants Gonsalves, Gagne, Perry, Silvia and the Town " have conspired to . . . and have

acting under color of law denied the plaintiff the use of his home and . . .  purposely adopted a

policy to deny the plaintiff the [lawful] use of his land."  (Complaint at ¶ 34.)  Jadlowe seeks

damages for "compensable injury including emotional distress" and legal fees incurred by

defending his property rights.  (<u>Id.</u>)

    Defendants argue that Jadlowe fails to allege that the municipal defendants caused any

deprivation.  (Defendants' Memorandum at pg. 8)  Defendants first note that the combined

permit did not deprive Jadlow of the right to use his land; rather, that permit put him "in a better

position." (Id.)  It is clear that the combined permit did not deprive Jadlowe of the use of his

land, accepting arguendo that such deprivation implicates a federal right. (Complaint at ¶ 35.)  If

a defendant has not deprived the plaintiff of a right, the plaintiff has no § 1983 claim.  See

Adickes, 398 U.S. at 150.  The issuance of the combined permit did not "deprive" Jadlowe of the

right to use his home.

Notwithstanding the absence of any deprivation resulting directly from the combined

permit, Jadlowe further alleges that defendant Gagne knew or should have known that a third-

party, the Frates, would appeal the combined permit in state court.  (Complaint at ¶ 21.)  Jadlowe

further alleges that, "given the history of this case, the Defendants were aware that such an

appeal would be filed." (Id. at pg. 2.)  Jadlowe appears to be contending that, by participating in

the issuance of the combined permit, Gagne and/or the other defendants are somehow

responsible for the work stoppage caused by the Frates' third-party state court action.

Defendants argue that they cannot be responsible for the actions of a private third-party, the

Frates.

§ 1983 claims require causation, so that a plaintiff must show "that the defendants'

conduct was the cause of the alleged deprivation." Rodriquez-Cirilo v. Garcia, 115 F.3d 50, 53

(1st Cir. 1997)(granting summary judgment where plaintiff could establish neither proximate

cause nor "but-for" causation). "As the Supreme Court noted in Carey, § 1983 actions are a

'species of tort liability' intended to compensate persons for injuries that are caused by the

deprivation of constitutional rights.'" Olsen v. Correiro, 189 F.3d 52, 66 n.16 (1st

Cir.1999)(quoting Carey v. Piphus, 435 U.S. 247, 253-54 (1978)).

Jadlowe cannot show that any of the defendants' involvement in the issuance of the

20

combined permit was the "but for" cause of Jadlowe being deprived of any right to use his land; as discussed above, the permit allows Jadlowe to use his land rather than depriving him of its use.  Moreover, Jadlowe's alleged deprivation would have occurred whether or not the combined permit had been issued, because, without that permit, Jadlowe would still have been unable to construct his house due to the second stop-work order. Further, even if the combined permit led to the Frates' filing suit, Jadlowe has not alleged that any of the defendants exercised such control over the Frates as to cause them to file suit.  Absent some allegation of control or influence, Jadlowe cannot hold Defendants responsible for another's actions, as "the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." Rogan v. Menino, 175 F.3d 75, 77-78 (1st Cir.1999)(affirming dismissal of § 1983 claims against individuals where the complaint "utterly failed to link either defendant to . . . the alleged deprivation").

The Frates' state court action has not caused any deprivation for which the defendants are responsible.  This is especially true given that the Frates could have brought their action if the original building permit issued by Reed had been upheld, obviating the need for a special permit. In other words, Defendants could not have concurrently appeased Jadlowe and prevented the Frates from bringing a third-party action.

Moreover, neither Gagne nor any of the other defendants are responsible for the Frates' lawsuit, because the Frates are a private party and their actions are not attributable to the State. See, e.g., Rodriguez-Garcia v. Davila, 904 F.2d 90, 95-100 (1st Cir.1990); Yeo v. Town of Lexington, 131 F.3d 241, 248-255 (1st Cir.1997).  For the State to have acted through a private party, the private party's "conduct allegedly causing the deprivation of a federal right must be

fairly attributable to the State." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982).

In considering whether or not the conduct is fairly attributable to the State, the Court considers "(1) whether there was an elaborate financial or regulatory nexus between [the private actors] and [the state] which compelled [the private actors] to act as they did, (2) an assumption by [the private actors] of a traditionally public function, or (3) a symbiotic relationship involving the sharing of profits." <u>Ponce v. Basketball Federation of the Commonwealth of Puerto Rico</u>, 760 F.2d 375, 377 (1st Cir.1985). Plaintiff alleges no facts to show any kind of nexus or relationship between the Frates and the defendants. Neither does he allege any facts to indicate that the Frates had assumed a public function. Therefore, the Frates' state court action cannot be attributed to Gagne nor any other municipal defendants.

In somewhat muddled prose, Jadlowe also alleges that defendant Silvia has "joined the conspiracy to prevent Jadlowe from completing his project" because he allegedly is helping the Frates in their third-party lawsuit. (Complaint at ¶ 31.) According to Plaintiff, Silvia has contacted the Frates' attorney in an "attempt to impeach his own vote to grant Jadlowe [the combined permit]." (<u>Id.</u>) Jadlowe's allegations do not lead to a valid cause of action. Even if it were true that Silvia has assisted the Frates in their litigation, Jadlowe has not alleged any facts to indicate that Silvia's assistance has led to any deprivation for Jadlowe. Jadlowe cannot establish that the defendants' participation in the combined permit process, nor the Frates' lawsuit, was the cause of any deprivation. Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Claim One insofar as it alleges any liability stemming from the combined permit process and/or the Frates' lawsuit. As the only accusation leveled at Defendant Silvia involves his actions in the Frates' lawsuit, Claim One, as against him, is dismissed in its entirety.

22

Jadlowe's claim is not limited to the combined permit process, however, despite Defendants' simplified characterization.  Jadlowe asserts that he was deprived of the use of his land prior to the issuance of the combined permit.  He alleges that Selectman Gonsalves, Executive Administrator Gagne, and Planning Director  Perry  "conspired to prevent the Town's zoning exemption from benefitting the Plaintiff," and avers conduct by each Defendant, except Silvia, that resulted in denying Jadlowe the use of his land. (Complaint at ¶ 22.)  Defendants do not address any of Plaintiff's allegations regarding Defendants' actions prior to the issuance of the combined permit.

The fact that Jadlowe eventually obtained a permit to continue his construction does not exclude Defendants' allegedly wrongful conduct that deprived him of the use of his land prior to the permit.  Thus, the Court DENIES Defendants' Motion as to Claim One insofar as Jadlowe sufficiently pled that wrongful conduct by the defendants deprived him of the use of his land.

III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants Motion to Dismiss is ALLOWED in part, and DENIED in part.  Accordingly:

(1) Claim Two is dismissed, in its entirety, against all Defendants;

(2) Claim One under § 1983 against the Town of Dartmouth is dismissed to the extent that such claim arises out of the events or series of events considered by the superior court;

(3) Claim One under § 1983 against Defendant Silvia is dismissed in its entirety;

(4) Claim One under § 1983 against the remaining defendants is dismissed insofar as it

alleges a deprivation through the combined permit and/or the Frates' lawsuit.[13]

Counsel are further ordered to appear before the Court for a status conference on Wednesday, March 22, 2006 at 10:00 am.


LEO T. SOROKIN

Leo T. Sorokin
United States Magistrate Judge


Date:   March 3, 2006

---

[13]   The court notes that, as defendant Jean Lentini was not a party to the Motion to Dismiss, Plaintiff's Claim Three against her remains.