UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10516-LTS

THOMAS JAMES JADLOWE,

                Plaintiff

v.

TOWN OF DARTMOUTH, LEONARD
GONSALVES, MICHAEL J. GAGNE,
DONALD A. PERRY, SCOTT E. SILVIA,
JOEL S. REED and JEANNE E. LENTINI,

                Defendants

MEMORANDUM IN SUPPORT OF
MUNICIPAL DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

I.      <u>INTRODUCTION/PROCEDURAL HISTORY</u>

      In this action, plaintiff alleges that the Town of Dartmouth and Town officials Leonard Gonsalves, Michael J. Gagne, Donald A. Perry, and Joel S. Reed (collectively, the "defendants") violated his Equal Protection rights in connection with two orders issued to plaintiff to stop work on property located at 30 Arch Street in the Town (the "Property").

      The Town previously filed a Motion to Dismiss the two-count Complaint in its entirety. In a Memorandum and Order on the Town's motion dated March 3, 2006 (the "Memorandum"), the Court took the following action:

      a.      Dismissed Count II of the Complaint, which sought injunctive relief, in its entirety.  <u>Memorandum</u>, p.11;

      b.      Dismissed Count I as against defendant Scott E. Silvia.  <u>Memorandum</u>, p.22;

      c.      Limited plaintiff's claims against the defendant Town of Dartmouth to the period between the issuance of the <u>second</u> stop-work order (November 24, 2003) and the issuance of a

special permit that allowed plaintiff to resume working on the property (November 19, 2004).[1]
<u>Memorandum</u>, p.19, ¶2; pp.20-21;

      d.      Limited plaintiff's claims against the remaining individual defendants to the
period between the issuance of the <u>first</u> stop-work order (March 19, 2002) and the issuance of the
special permit (November 19, 2004).  <u>Memorandum</u>, pp.20-21.

      Subsequently, defense counsel learned of evidence that cast doubt on whether plaintiff
holds any interest in the Property, and thus has standing to pursue this action.  As a result, at a
Scheduling Conference held on December 4, 2006, the Court allowed, at defendants' request, a
phased discovery period in which discovery was limited to determining what evidence, if any,
plaintiff has to prove that (1) he owned the property at 30 Arch Street during the period his
claims allegedly accrued; and (2) he suffered proveable damages for any period that he may have
owned the property.  The Court further granted leave to the defendants to move for Summary
Judgment on these issues.

      The defendants submit that the record compiled thus far demonstrates that plaintiff's
interest in the Property was limited to a life estate which terminated on November 30, 2003.
Therefore, defendants submit, plaintiff's claim against the Town ran for a total of six days (from
November 24, 2003 until November 30, 2003) and against the individual defendants for a total of
20½ months (from March 19, 2002 until November 30, 2003).  Defendants further submit that
plaintiff can establish no more than $8,200 in damages accrued during these periods.  As such,
defendants seek a ruling that, should plaintiff prevail on the issue of liability, his recovery is to

---

[1]The special permit has been appealed by a third-party abutter in Bristol Superior Court.  <u>See</u> C.A. No. BRCV2004-01358.

be limited to the period between March 19, 2002 and November 30, 2003, and, further, that he may recover a maximum of $8,200 in damages, for the reasons explained below.[2]

II.    L.R. 56.1 STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

The relevant facts underlying this case are set forth in Defendants' Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987). The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the nonmovant's claim, or demonstrating that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence. Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

IV.    ARGUMENT

The defendants contend that plaintiff's interest in the Property was limited to a life estate which ran from March 16, 2001 until November 30, 2003. Since this Court has already determined that plaintiff's claim against the Town did not accrue until November 24, 2003, and that plaintiff's claim against the individual defendants did not accrue until March 19, 2002, the

---

[2]As noted, discovery to this point has been limited to identifying the evidence of plaintiff's interest in the Property, and proveable damages. In filing the instant motion, defendants do not waive their right to conduct further discovery on the issue of liability, and to file a dispositive motion, if appropriate, as to same.

defendants further contend that plaintiff's claim against the Town runs for a total of six days (from November 24, 2003 until November 30, 2003) and his claim against the individual defendants runs for a total of 20½ months (from March 19, 2002 until November 30, 2003). Finally, the defendants contend that plaintiff can prove a maximum of $8,200 in out-of-pocket expenses during these periods and, thus, his recovery should be limited accordingly.

A.    Plaintiff's Interest in the Property

Plaintiff asserts that he has continuously owned the Property since March 16, 2001, when his father-in-law, Manuel Oliveira ("Oliveira"), allegedly conveyed title to him in exchange for $160,000.  Statement, ¶¶8-10.  However, this transfer of the Property – which is one of several that took place among Jadlowe family members between 1999 and 2001 – did not vest plaintiff with full title to the Property; rather, it vested plaintiff with a life estate only, which terminated upon Oliveira's death on November 30, 2003.

Specifically, real estate records demonstrate that on September 28, 1998, Oliveira – the original owner of the Property – conveyed the Property to Thomas Jadlowe's son, Marc. Statement, ¶3.  Nine months later, on June 29, 1999, Marc Jadlowe conveyed the Property back to Oliveira.  Statement, ¶4.  That same day, Oliveira deeded to himself a life estate in the Property, with the remainder interest going to Marc Jadlowe.  Statement, ¶5.

Just over a year later, on September 12, 2000, Oliveira conveyed the Property to Thomas Jadlowe for the first time.  Statement, ¶6.  On February 1, 2001, a deed purportedly executed by Thomas Jadlowe conveyed the Property back to Oliveira for the sum of $1.00.  Statement, ¶7. Finally, on March 16, 2001, Oliveira conveyed his interest in the Property back to Thomas Jadlowe for $160,000.  Statement, ¶8. On November 30, 2003, Oliveira died.  Statement, ¶9. Notably, Thomas Jadlowe testified at deposition in the instant case that he was unaware of any of

these transactions (save the final one on March 16, 2001) at the time each such transaction was made – including the September 12, 2000 transaction in which Oliveira conveyed the Property to him for the first time, and the February 1, 2001 transaction in which Jadlowe purportedly executed a deed, conveying the Property back to Oliveira for $1.00. Statement, ¶11. Indeed, plaintiff testified that he has no memory regarding the September 12, 2000 and February 1, 2001 transactions (in which the Property was purportedly deeded back and forth between Oliveira and himself) at all. Id.

It is a legal axiom that one who conveys property may only convey that interest which he holds in the property. See, e.g., Hurd v. Cushing, 24 Mass. 169, 179 (1828) ("[t]hough he undertakes to convey a fee, when he has only an estate for life … it is a conveyance which he was wholly unauthorized to make"). On March 16, 2001, Oliveira held only a life estate in the Property, which he had deeded to himself on June 29, 1999. Statement, ¶5. Therefore, the March 16, 2001 transfer from Oliveira to plaintiff conveyed only a life estate in the Property to plaintiff, for the lifetime of Oliveira. See G.L. c.184, §9 ("[a] conveyance by a tenant for life … which purports to grant a greater estate than he possesses … shall pass to the grantee all the estate which such tenant can lawfully convey"); Daley v. Daley, 308 Mass. 293, 307, 32 N.E.2d 286 (1941) ("a conveyance by a tenant for life which purports to grant a greater estate than he possesses … passes to the grantee the estate that such tenant can lawfully convey"); Hurd, 24 Mass. at 179, supra.

It is a further axiom of real estate law that a life estate terminates upon the death of the individual whose life measures the duration of the estate – in this case, Oliveira. See Daley, 308 Mass. at 307, 32 N.E.2d 286 ("the right of entry accrued [in the owners of the reversionary interest], when the life tenant died"). Therefore, plaintiff's interest in the Property ceased to

exist when Oliveira died on November 30, 2003, and title to the Property passed to Marc Jadlowe, as holder of the remainder interest.

Notably, a judge in this Court has already determined, as part of a criminal proceeding charging Marc Jadlowe with drug possession, that plaintiff does not currently hold any legal interest in the Property.  See U.S. v. Amaral, et al., No. 05-CR-10306-RGS.  Specifically, on December 21, 2005, the U.S. Attorney obtained a *lis pendens* on the Property, where, it is alleged, Marc Jadlowe stored cocaine.  Statement, ¶¶12-13.  On April 4, 2006, Thomas Jadlowe filed a motion for relief from the order of *lis pendens*, asserting that he "is the sole owner of the Property."  Statement, ¶14.  On April 20, 2006, the Court (Stearns, J.), after reviewing the Property's history of conveyances, described above, denied Thomas Jadlowe's motion, holding that "[t]here is no showing that Thomas Jadlowe has a cognizable interest in the disputed property."  Statement, ¶¶15-16.

As Thomas Jadlowe no longer held title to the Property as of November 30, 2003, he has no standing to assert claims based on any harm allegedly done to the Property after that date. Therefore, defendants submit, any damages plaintiff may potentially recover should be limited to those that he may have suffered from March 19, 2002 until November 30, 2003 (as against the individual defendants), and from November 24, 2003 until November 30, 2003 (as against the Town).

B.     Plaintiff's Damages Are Limited to a Maximum of $8,200

Plaintiff has alleged damages in the amount of $132,805 as a result of the occurrences alleged in the Complaint.[3]  Statement, ¶17.  Defendants submit that all but $8,200 of these alleged damages are not recoverable, as explained below.

_____

[3]Defendants acknowledge that, in addition to the out-of-pocket expenses which plaintiff has itemized, the Complaint also seeks damages for alleged emotional distress, as well as punitive damages against the individual defendants.

Plaintiff claims that the defendants wrongfully ordered him to stop work on renovations to the Property, causing him to incur expenses of $132,805 in payments for a mortgage, real estate insurance, real estate taxes, and construction materials, in addition to rent he paid while living at a different location.  Statement, ¶¶17-18.  However, plaintiff would have accrued virtually all of these costs irrespective of the stop-work orders, because plaintiff was renovating the Property for his own use, rather than to put the Property up for sale or rent.  Statement, ¶19.  Therefore, even if the stop-work orders had not issued, plaintiff would have had to pay the mortgage, real estate insurance, and real estate taxes on the Property, meaning the defendants' actions cannot be said to have caused these losses.  Similarly, plaintiff testified at deposition that construction materials for which he seeks reimbursement[4] have either already been installed at the Property, or will be used once he is permitted to proceed with the renovations.[5]  Statement, ¶20.  Thus, there is no "loss" associated with the cost of these materials.  Accordingly, the only losses which might have been caused by the defendants' allegedly wrongful actions consist of rent payments that plaintiff made during the time he would have lived at the Property, had it not been for the fact that renovations were delayed due to the stop-work orders.  As this time period consisted of, at most, 20 ½ months (from March 19, 2002 to November 30, 2003), and plaintiff claims that he paid $400 a month in rent during this period, plaintiff's recoverable expenses should be limited to a maximum of $8,200.  Statement, ¶18.  (Plaintiff, of course, will have to establish on what date the Property would have been ready for him to live in, absent the stop-work orders, in order to prove his exact damages in rent payments).

---

[4]These construction materials include siding, plumbing, and windows and doors.  Plaintiff testified that the second reference to "construction plumbing" on the damages chart should have referenced costs of installing windows and doors.  Statement,¶20.

[5]As noted, plaintiff is currently unable to proceed with renovations because a third-party abutter has appealed, to the Bristol Superior Court, the special permit that the Town issued to plaintiff.

Plaintiff's claimed expenses should be limited for the additional reason that he incurred much of the expenses either before his claims accrued (on March 16, 2002), or after his claims ceased to exist (on November 30, 2003).  For instance, plaintiff seeks to recover payments he made for insurance, mortgage, taxes, and rent from January 1, 2002 through March 16, 2002 (prior to the accrual of plaintiff's claims) and from December 1, 2003 through all of 2006 (after plaintiff's claims terminated).  Statement, ¶21.  As these costs cannot be attributed to the defendants' action, defendants may not be held liable for them, and plaintiff's potential recovery should be limited accordingly on this additional basis.

V.     CONCLUSION

WHEREFORE, for the foregoing reasons, the defendants respectfully request that this Court allow their Motion for Partial Summary Judgment, and hold that, should plaintiff prevail on the issue of liability, his recovery is to be limited to the period between March 19, 2002 and November 30, 2003 as against the individual defendants, and the period between November 24, 2003 and November 30, 2003 as against the Town, and, further, that plaintiff may recover a maximum of $8,200 for out-of-pocket expenses.

MUNICIPAL DEFENDANTS,

By their attorneys,

/s/Jackie Cowin
Joseph L. Tehan, Jr. (BBO# 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA 02110
(617) 556-0007

306445/METG/0657