UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10516-LTS

THOMAS JAMES JADLOWE,

Plaintiff

v.

TOWN OF DARTMOUTH, LEONARD
GONSALVES, MICHAEL J. GAGNE,
DONALD A. PERRY, SCOTT E. SILVIA,
JOEL S. REED and JEANNE E. LENTINI,

Defendants

AFFIDAVIT OF COUNSEL

I, JACKIE COWIN, under oath do hereby depose and state as follows:

1.  I am licensed to practice law in the Commonwealth of Massachusetts and in the

    United States District Court for the District of Massachusetts, and am an associate

    at the law firm of Kopelman and Paige, P.C.

2.  I was involved in preparing Defendants' Motion for Partial Summary Judgment in

    the above-captioned case.

3.  The deposition excerpts attached hereto are true and accurate copies of pages

    from the transcript of the deposition of plaintiff Thomas Jadlowe.

Signed under the penalties of perjury March 26, 2007.

Jackie Cowin (BBO#655880)

310641/METG/0657

FILED
IN CLERKS OFFICE

2007 MAR 27 P 12: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

# Miniscript and Word Index

### Thomas James Jadlowe
### Vs
### The Town of Dartmouth, et al

### Deposition of
### Thomas J. Jadlowe

### October 27, 2006

*Leavitt Reporting, Inc.*
*1207 Commercial Street, Rear, Weymouth, MA 02189*
*800-464-1877,  781-335- 6791, fax 781-335-7911*

13

1 restraining order and order of lis pendens by Thomas
2 Jadlowe as to Mark Jadlowe.
3          Sir, did I read entry 125 into the
4 record correctly?
5     A. Yes.
6     Q. Picking up again, Denying 125 motion as to
7 Mark Jadlowe, paren, 10 "Thomas Jadlowe's motion for
8 partial relief from post indictment restraining
9 order and lis pendens is denied. There is no
10 showing that Thomas Jadlowe had a cognizable
11 interest in the disputed property." R G Stearns,
12 U S D J.
13          Sir, did I read that correctly into the
14 record?
15     A. Yes.
16     Q. Does that refresh your memory in any way as
17 to the disposition or finding of the court
18 concerning your interest in that property?
19          MR. FLEMING: Objection.
20     A. No.
21          MR. FLEMING: I believe the question,
22 when we get the transcript we'll see, but I believe
23 misstated the record. All Judge Stearn did was say

14

1 that he deny the motion for relief and simply said
2 that there wasn't presented enough evidence at that
3 time of an interest by Mr. Jadlowe. I understand,
4 although I was not present, I did not represent him,
5 that there was some confusion, and you'll see in the
6 record that there are other motions and Judge Stearn
7 still didn't grant relief, but that issue is still
8 open.
9          MR. TEHAN: I appreciate your comments,
10 Mr. Fleming, of course with the recognition that
11 you're not the witness.
12     Q. For the moment all I was trying to confirm,
13 had I read that entry from the docket correctly,
14 sir?
15     A. Yes.
16     Q. As you sit here today, apart from what I've
17 read to you, do you have a knowledge that Judge
18 Stearns in the federal prosecution against your son,
19 on what was presented to him, that you do not have
20 an interest in the property?
21     A. No.
22          MR. FLEMING: Objection.
23     Q. You don't know that. You can answer. You

15

1 didn't know that today?
2          MR. FLEMING: Answer the question.
3     A. No.
4     Q. I'll defer to Mr. Fleming of course because
5 he is your attorney, but basically if an objection
6 is made, you can answer still because there is no
7 judge to rule on it. So your response is that you
8 didn't know that this had happened in terms of that
9 finding?
10     A. No.
11     Q. Do you know who represented your interests
12 in making that motion in this case, which attorney?
13          MR. FLEMING: Parker.
14     A. Oh, Peter Parker.
15     Q. And where is Peter Parker's address or his
16 office?
17     A. Somewhere in Boston.
18     Q. All right. Do you know what evidence
19 Mr. Parker -- or Attorney Parker -- submitted to the
20 court in connection with the motion that we were
21 discussing?
22     A. No.
23     Q. All right. And I'm sorry to belabor the

16

1 point, is today the first time you knew of Judge
2 Stearn's finding in that regard?
3     A. Yes.
4     Q. All right.
5          MR. FLEMING: I made my objection. I
6 think you are mischaracterizing what the action was
7 of Judge Stearn, but we'll leave that for another
8 day.
9          MR. TEHAN: Yes. I think we will.
10     Q. Sir, what is your relationship to a
11 gentleman by the name of Manuel Oliveira?
12     A. That's my exfather-in-law.
13     Q. And is Mr. Oliveira alive today?
14     A. No.
15     Q. Did he die, to your memory, on or about
16 November 30th, 2003?
17     A. I guess so. I know it's been a few years.
18     Q. Do you have any reason to suggest, because
19 I'm presenting it in good faith, that that was not
20 the date on which he died?
21     A. I just can't remember.
22          MR. TEHAN: Can I mark this as
23 Exhibit 2, please.

17

1    (Exhibit No. 2 was marked
2    for Identification.)
3    **Q.** Mr. Jadlowe, I am going to present to you
4 for your review what has been marked as Exhibit 2
5 which is plaintiff's response to the municipal
6 defendants interrogatories. Do you see that?
7    **A. Yes.**
8    **Q.** Did you sign these answers under the pains
9 and penalties of perjury that are subject to the
10 applicable rules of evidence as to their admission
11 into the evidence at the time of trial, on or about
12 October 25th, 2006?
13    **A. The only one I didn't, nothing to do with**
14 **was this one here.**
15    **Q.** Number 4?
16    **A. Yes.**
17    **Q.** And that's because that is an objection?
18    **A. Yes.**
19    **Q.** But my question sir --
20    **A. Yes.**
21    **Q.** And is this indeed your signature on this
22 document?
23    **A. Yes.**

18

1    **Q.** Is it your contention, sir, as stated in
2 answer to Interrogatory No. 1 that you have owned
3 the 30 Arch Street property in the Town of Dartmouth
4 since March 16, 2001?
5    **A. Yes.**
6    **Q.** And is it your position today that the only
7 encumbrances or the only things to which your
8 ownership is subject are a mortgage dated May 1,
9 2003 to Ameriquest Mortgage Company and the
10 forfeiture claims that we just discussed?
11    **A. Yes.**
12    **Q.** And again it is your contention today and
13 your position again as stated in Interrogatory No.
14 1, that you derive title to the property from your
15 ex-father-in-law Manuel Oliveira, and you did so
16 pursuant to a deed that was dated March 16, 2001,
17 which is reported at book 4926 page 25 in the
18 Bristol County Registry of Deeds?
19    **A. Yes.**
20    **Q.** So we're complete on the record, in your
21 responses that you just made to me, is it fair to
22 say that your claim of title derived solely from
23 Mr. Oliveira, to the best of your understanding?

19

1    **A. Yes.**
2    **Q.** And solely from the deed dated March 16,
3 2001 that we discussed?
4    **A. Yes.**
5    **Q.** I wanted to review with you if I could,
6 Mr. Jadlowe, some of the deeds concerning this
7 property that your attorney provided to me in
8 connection with his response to our request for
9 production of documents. And the first deed is one
10 that I would like to have marked as Exhibit 3,
11 please.
12    (Exhibit No. 3 was marked
13    for Identification.)
14    **Q.** Directing your attention to Exhibit 3,
15 Mr. Jadlowe, does it appear to be a deed which runs
16 from Mr. Oliveira to your son, Mark?
17    Mr. Fleming: Is that the question?
18 Objection. The document speaks for itself.
19    MR. TEHAN: I understand.
20    **Q.** Is that what it states in the upper left?
21    **A. Yes.**
22    **Q.** And is the date of this deed, sorry, give
23 me a second, please.

20

1    (Discussion off the record.)
2    MR. TEHAN: Back on the record.
3    **Q.** If I could, Mr. Jadlowe, with respect to
4 Exhibit 3, and recognizing Mr. Fleming's anticipated
5 legitimate objection that the document speaks for
6 itself, can we agree that this appears to be a deed
7 from Mr. Oliveira to your son Mark Jadlowe dated
8 September 28th, 1998?
9    **A. Yes.**
10    **Q.** And do you see that the consideration paid
11 is noted as love and affection?
12    **A. Yes.**
13    **Q.** Do you have any memory of this transaction?
14    **A. No.**
15    **Q.** Were you aware of it when it was made?
16    **A. No.**
17    **Q.** Do you recall when if at all you were first
18 aware of the transaction between Manuel Oliveira and
19 your son Mark Jadlowe in September of 1998?
20    **A. No.**
21    **Q.** Were Manuel and Mark close?
22    **A. Yes.**
23    **Q.** Did Mark provide any services to Manuel as

21

1  of 1998? Did he care for him in some fashion?
2  **A.  Yes.**
3  **Q.**  But at least as of the time that this
4  transaction occurred in September of 1998, you were
5  not made aware of it?
6  **A.  No.**
7  MR. TEHAN: Mark this as the next
8  exhibit.
9  (Exhibit No. 4 was marked
10  for Identification.)
11  **Q.**  Mr. Jadlowe, I am next going to show you a
12  second deed in our sequence which I suggest first of
13  all deals with 30 Arch Street and runs from Mark
14  Jadlowe to Manuel Oliveira. And would you agree
15  with me, subject to the objection which was noted
16  earlier, that this does seem to be a deed and states
17  that it's a deed from Mark Anthony Jadlowe to Manuel
18  Oliveira concerning 30 Arch Street, and that it is
19  dated June 29, 1999?
20  **A.  Yes.**
21  **Q.**  And that would be from the materials we've
22  used, something a little short of a year after the
23  deed from Mr. Oliveira to Mark, correct?

22

1  **A.  Yes.**
2  **Q.**  Do you have any recollection of the deed
3  from your son to Manuel Oliveira being prepared and
4  recorded in June of 1999?
5  **A.  No.**
6  **Q.**  Did you have any knowledge of it or any
7  such transaction taking place at that time?
8  **A.  No.**
9  **Q.**  Do you know why Manuel deeded the property
10  to Mark in 1998?
11  **A.  No.**
12  **Q.**  Were you consulted with respect to that
13  transaction?
14  **A.  No.**
15  **Q.**  Do you know why in June of 1999 Mark deeded
16  the property back to Manuel?
17  **A.  No.**
18  **Q.**  Do you know what the consideration --
19  strike that. Again, this is a recited consideration
20  of love and affection in the June 29th, 1999 deed,
21  is it not?
22  **A.  Yes.**
23  **Q.**  Do you have any understanding or any

23

1  information concerning the basis or reason for
2  either of the transactions recorded in exhibits 3
3  and 4?
4  **A.  No.**
5  **Q.**  And you had no awareness of them at the
6  time?
7  **A.  No.**
8  **Q.**  As of September 28, 1998, as reflected on
9  Exhibit 3, who is living at 30 Arch Street?
10  **A.  Mark and my father-in-law.**
11  **Q.**  And as of June 29, 1999, who was living at
12  30 Arch Street?
13  **A.  Mark and my father-in-law.**
14  **Q.**  Can you describe that property as it
15  existed at that time?
16  **A.  There was the main house, the original**
17  **house that my father-in-law had bought.**
18  **Q.**  Could I stop you there. Could you describe
19  that building for me as it existed at that time?
20  **A.  No.**
21  **Q.**  Was it a single-family house?
22  **A.  Yes.**
23  **Q.**  And you indicated that Mr. Oliveira had

24

1  built that house himself?
2  **A.  No. He bought that house.**
3  **Q.**  All right. And prior to June of 1999, had
4  you ever lived in that house?
5  **A.  No.**
6  **Q.**  Where were you living at that time?
7  **A.  Fairhaven.**
8  **Q.**  In the same address that you gave as of
9  today?
10  **A.  Yes.**
11  **Q.**  So you've lived there how many years in
12  total, sir?
13  **A.  Approximately 25.**
14  **Q.**  I should ask you this, by the way, just in
15  terms of brief background. Are you presently
16  employed?
17  **A.  Yes.**
18  **Q.**  What do you do for a living, sir?
19  **A.  I'm self-employed.**
20  **Q.**  What do you do?
21  **A.  I have a painting and wallpaper business.**
22  **Q.**  How long have you maintained that business?
23  **A.  Approximately 25 years.**

29

1  want to advise him not to answer you can do so, and
2  I'll reserve my rights. Otherwise, I'll proceed
3  with my inquiry, and you can make your objection as
4  you see fit.
5      Q.  Sir, first of all, to break this down a
6  bit, does Exhibit 5 reflect a date and signature of
7  Manuel Oliveira as of June 29, 1999?
8      A.  Yes.
9      Q.  And can we agree that that is the same date
10  that is reflected on Exhibit 4?
11      A.  Yes.
12      Q.  At that time as of on June 29, 1999, did
13  you have any awareness of the deed which comprises
14  Exhibit 5?
15      A.  No.
16      Q.  You didn't discuss it with either your ex-
17  father-in-law or your son; is that true?
18      A.  No.
19          MR. FLEMING:  In fairness to you, Mr.
20  Tehan, that last question, his response, you asked
21  sort of a double negative.
22          MR. TEHAN:  Why don't we have the
23  reporter read it back.

30

1          (The question was read by
2          the court reporter.)
3          MR. FLEMING:  Do you see what I'm
4  saying?
5          MR. TEHAN:  Let me clarify it.
6      Q.  Is it true, sir, that you did not discuss
7  the transactions that occurred on June 29, 1999,
8  with either your son or your father-in-law?  Is that
9  true that you did not?
10      A.  Yes.
11      Q.  He raised a good point.
12          MR. TEHAN:  Mr. Fleming, I am now going
13  to have marked as Exhibit 6 the next deed in
14  sequence.
15          (Exhibit No. 6 was marked
16          for Identification.)
17      Q.  Sir, I am next going to review with you
18  what we marked as Exhibit 6 which appears and
19  purports to be a deed from Manuel Oliveira to you
20  which is dated September 12, 2000.  Do you see that?
21      A.  Yes.
22      Q.  Do you recall this transaction?
23      A.  No.

31

1      Q.  Do you have any memory that on or about
2  September 12, 2000, Mr. Oliveira deeded some
3  interest in the Arch Street property to you?
4      A.  No.
5      Q.  You had indicated earlier in the deposition
6  and in your answers to interrogatories that as far
7  as you're concerned your title to the property
8  vested in you on March 16, 2001, correct?
9      A.  Yes.
10      Q.  Were you aware that Mr. Oliveira in 2000,
11  on September 12th, had prepared and signed this
12  deed?
13      A.  No.
14      Q.  Were you aware that he had recorded it?
15      A.  No.
16      Q.  Prior to my discussing this with you, were
17  you aware of this document's existence?
18      A.  No.
19      Q.  Without speculating, do you know why this
20  deed was prepared?
21      A.  No, I have no idea.
22          MR. TEHAN:  Just give me a minute,
23  gentlemen.  Off the record.

32

1          MR. FLEMING:  Sure.
2          (Off the record
3          discussion.)
4          MR. FLEMING:  The witness I believe
5  wants to correct his answer.
6          MR. TEHAN:  I understand.
7      Q.  Sir, having overheard a discussion between
8  you and your attorney, do you -- strike that.
9          I will reask a question that I
10  previously asked, and if you care to correct an
11  answer you may do so.  With respect to Exhibit 6,
12  have you ever seen this document before today?
13      A.  Yes.
14      Q.  When and where?
15      A.  At Attorney Flemming's office.
16      Q.  When was that, sir?
17          MR. FLEMING:  As best you can remember.
18      Q.  He can't answer for you.
19      A.  I can't remember.
20      Q.  Was it within the past year?
21      A.  I don't recall.
22      Q.  Was that your first awareness of Exhibit 6,
23  when you saw it in Mr. Flemming's office?

33

| | |
|---|---|
| 1 | **A.  Yes.** |
| 2 | **Q.**  And forgive me, it is your testimony you |
| 3 | had no awareness of this deed to you at the time it |
| 4 | occurred, that being September 2000?  Is that true? |
| 5 | **A.  Yes.** |
| 6 | MR. TEHAN:  Another deed, Exhibit 7. |
| 7 | (Exhibit No. 7 was marked |
| 8 | for Identification.) |
| 9 | **Q.**  Mr. Jadlowe, I am next going to present to |
| 10 | you for review Exhibit 7, which purports to be a |
| 11 | deed from you to Mr. Oliveira of the property |
| 12 | located at 30 Arch Street for the sum of $1 dated |
| 13 | February 1st, 2001.  Do you see that? |
| 14 | **A.  Yes.** |
| 15 | **Q.**  And is that your signature on that date? |
| 16 | **A.  Yes.** |
| 17 | **Q.**  And do you recall preparing or signing that |
| 18 | deed on or about that date? |
| 19 | Mr. Fleming:  Objection. That's two |
| 20 | questions. |
| 21 | **Q.**  Do you remember signing the deed on |
| 22 | February 1st, 2001? |
| 23 | **A.  Yes.** |

35

| | |
|---|---|
| 1 | signed it, about it? |
| 2 | **A.  I don't understand your question.** |
| 3 | **Q.**  Where was this deed presented to you for |
| 4 | signature?  Where were you at that point?  Do you |
| 5 | recall? |
| 6 | **A.  I believe it was Mathieu and Mathieu.** |
| 7 | **Q.**  Is it your contention that Mathieu and |
| 8 | Mathieu was your attorney on that date, or |
| 9 | represented you? |
| 10 | **A.  I think he was representing when we bought** |
| 11 | **the house, or doing the paperwork.** |
| 12 | **Q.**  All right.  What were you told when you |
| 13 | were asked to come to Mathieu and Mathieu to sign |
| 14 | the deed? |
| 15 | MR. FLEMING:  Which deed? |
| 16 | **Q.**  Exhibit 7? |
| 17 | **A.  That was probably about me buying the** |
| 18 | **house.** |
| 19 | **Q.**  All right.  If you bear with me, this |
| 20 | Exhibit 7 which we have been talking about, appears |
| 21 | to be a deed from you to Mr. Oliveira, not buying |
| 22 | the house but selling it.  Do you see that? |
| 23 | **A.  Yes.** |

32

34

| | |
|---|---|
| 1 | **Q.**  What were the circumstances at that time |
| 2 | that gave rise to your deeding an interest in this |
| 3 | property to Mr. Oliveira on February 1st, 2001? |
| 4 | **A.  I don't remember.** |
| 5 | **Q.**  Do you recall who presented this document |
| 6 | to you for your signature? |
| 7 | **A.  Yes.** |
| 8 | **Q.**  Who was that, sir? |
| 9 | **A.  I believe it was a law firm of Mathieu and** |
| 10 | **Mathieu.** |
| 11 | **Q.**  Where are they located? |
| 12 | **A.  New Bedford.** |
| 13 | **Q.**  And what particular attorney presented |
| 14 | Exhibit 7 to you for your signature? |
| 15 | **A.  I don't remember.** |
| 16 | **Q.**  Was Mathieu and Mathieu your attorney as of |
| 17 | February 1st, 2001? |
| 18 | **A.  I don't recall.** |
| 19 | **Q.**  Did that firm represent Mr. Oliveira as of |
| 20 | that date? |
| 21 | **A.  I don't think so.** |
| 22 | **Q.**  What discussion did you have with anyone |
| 23 | concerning Exhibit 7 at or before the time you |

36

| | |
|---|---|
| 1 | **Q.**  Can you explain that? |
| 2 | **A.  I don't remember.  I don't remember that** |
| 3 | **piece of paper at all.** |
| 4 | **Q.**  Do you know why you signed this deed on |
| 5 | that date? |
| 6 | **A.  I don't remember.** |
| 7 | **Q.**  Did you have any discussion with your |
| 8 | father-in-law, or your ex-father-in-law, about this |
| 9 | deed at the time you signed it or at any time |
| 10 | before? |
| 11 | **A.  I don't recall.** |
| 12 | **Q.**  So that we can clarify the record to the |
| 13 | extent we need to, is it your testimony as you sit |
| 14 | here today that you have no memory of |
| 15 | September 12th, 2000, or in September 2000 of |
| 16 | Mr. Oliveira deeding you the Arch Street property? |
| 17 | **A.  No.** |
| 18 | **Q.**  And do you have any memory, other than what |
| 19 | you just testified to, about your deeding the |
| 20 | property back to him on February 1st, 2001? |
| 21 | **A.  No.** |
| 22 | **Q.**  Do you have any recollection or |
| 23 | understanding as you sit here today what the purpose |

en

',

nember

oit 6,

41

43

1  A.  I wanted to live in Dartmouth.

2  Q.  Have you ever lived at the 30 Arch Street

3  property?

4  A.  No.

5  Q.  When you bought the property, had you made

6  any arrangement, whether written or verbal, with

7  Mr. Oliveira about whether or not he could remain on

8  it?

9  A.  Yes.

10  Q.  And what was that arrangement?

11  A.  He could stay there.

12  Q.  And was that verbal in nature?

13  A.  Yes.

14  Q.  And did he live at that property until he

15  died?

16  A.  Off and on.

17  Q.  Did Mr. Oliveira have another place at

18  which he lived between 2001 and 2003?

19  A.  I believe he was staying with his

20  girlfriend off and on.

21  Q.  What is her name?

22  A.  I believe it was Mary.

23  Q.  Do you know her last name, sir?

1  Q.  The exact street address?

2  A.  198 Main Street.

3  Q.  And was that owned by your landlord as

4  well?

5  A.  Yes.

6  Q.  And I understand from your prior question

7  that you did not evict Mark from the property.  Is

8  that true?

9  A.  No.

10  Q.  Is that true?

11  A.  Yes.

12  Q.  And do you know why for some period of time

13  he rented property in Fairhaven?

14  A.  Yes.

15  Q.  What was that reason, sir?

16  A.  The front house was demolished.

17  Q.  Was it after that event took place or prior

18  to it that he made arrangements to live elsewhere?

19  Let me give you a cleaner question.

20  Was it because a demolition of the

21  house was contemplated that Mark moved, to the best

22  of your understanding?

23  A.  I don't know.

42

44

1  A.  No.

2  Q.  Do you know where she lived when he would

3  stay with her?

4  A.  I think it was at some senior complex in

5  Fairhaven.

6  Q.  Between 2001 and 2003 -- strike that.

7  Before I get to that, at the time that you purchased

8  this interest in March 16, 2001, did you have any

9  arrangement with Mark as to whether he could remain

10  there?

11  A.  He is my son.

12  Q.  I understand.

13  A.  If he wanted to.  He was supposed to go

14  back to California.

15  Q.  Did Mark live at the property between 2001

16  and 2003, to your knowledge?

17  A.  I don't believe so.

18  Q.  When did he move and to where?

19  A.  He was living in Fair Haven next door to me

20  for a period of time.

21  Q.  What would be the exact street address, if

22  you remember?

23  A.  The what?

1  MR. TEHAN:  Give me a minute.  Let me

2  go off the record.

3  (Off the record

4  discussion.)

5  MR. TEHAN:  Back on the record, please.

6  Q.  Sir, at the time that you purchased an

7  interest in the property from Mr. Oliveira, did you

8  put any money down of your own?

9  A.  No.

10  Q.  Did you finance the entire amount of the

11  purchase?

12  A.  Yes.

13  Q.  And did you do so through a mortgage that

14  was recorded at the same time as the deed, if you

15  recall?

16  A.  I believe so.

17  MR. TEHAN:  Let's have marked the

18  mortgage as Exhibit No. 9, please.

19  (Exhibit No. 9 was marked

20  for Identification.)

21  Q.  Directing your attention to page 2 of

22  Exhibit 9, the mortgage, Mr. Jadlowe, do you see

23  that it states as follows:  The note states that the

53

| | | |
|---|---|---|
| 1 | **A.** | **Yes.** |
| 2 | **Q.** | Do you know the circumstances leading to |
| 3 | the writing of this letter? | |
| 4 | **A.** | **I don't recall.** |
| 5 | **Q.** | Does Mr. Mathieu or did Mr. Mathieu or |
| 6 | Paul Mathieu at any time ever represent you, to your | |
| 7 | knowledge? | |
| 8 | **A.** | **Represent me how?** |
| 9 | **Q.** | As an attorney? |
| 10 | **A.** | **For what?** |
| 11 | **Q.** | Anything. |
| 12 | **A.** | **No. The only thing he did was the house,** |
| 13 | **the sale of the house, I believe.** | |
| 14 | **Q.** | Which transaction? |
| 15 | **A.** | **My buying the house.** |
| 16 | **Q.** | And whom did he represent at that time? |
| 17 | You as the buyer or your father-in-law as the | |
| 18 | seller? | |
| 19 | **A.** | **I believe it was my father-in-law.** |
| 20 | **Q.** | Have you even spoken to Paul J. Mathieu |
| 21 | about anything? | |
| 22 | **A.** | **I wouldn't know him if he walked in here.** |
| 23 | **Q.** | Again forgive me. I don't want to ask |

54

| | | |
|---|---|---|
| 1 | questions repeatedly, but do you have any | |
| 2 | understanding of the circumstances giving rise to | |
| 3 | Exhibit 12 being written? | |
| 4 | **A.** | **No.** |
| 5 | **Q.** | At some point in time was the decision made |
| 6 | to do some renovation work at 30 Arch Street? | |
| 7 | **A.** | **Yes.** |
| 8 | **Q.** | And when was that decision made? |
| 9 | **A.** | **I think it was after we purchased the** |
| 10 | **house.** | |
| 11 | **Q.** | Who is the we, sir? |
| 12 | **A.** | **I purchased the house.** |
| 13 | **Q.** | Sometime after March 16, 2001? |
| 14 | **A.** | **Yes.** |
| 15 | **Q.** | And whose decision was it to renovate the |
| 16 | house? | |
| 17 | **A.** | **The building inspector.** |
| 18 | **Q.** | Can you explain what you mean by that? |
| 19 | **A.** | **We were going to take off the second floor** |
| 20 | **of the original house.** | |
| 21 | **Q.** | The one nearest to the street? |
| 22 | **A.** | **Yes.** |
| 23 | **Q.** | All right. Go ahead, please. |

55

| | | |
|---|---|---|
| 1 | **A.** | **And we pulled out a permit. Mark and a few** |
| 2 | **of his friends demo'd the second level.** | |
| 3 | **Q.** | Could I stop you for a second. Was that |
| 4 | the first permit that you were aware of for work at | |
| 5 | that house? | |
| 6 | **A.** | **On the front house.** |
| 7 | **Q.** | All right. Backtrack. Was the front house |
| 8 | built before the studio toward the rear of the | |
| 9 | property? | |
| 10 | **A.** | **I believe so, yes.** |
| 11 | **Q.** | And do you understand that a permit was |
| 12 | pulled at some point to construct the studio | |
| 13 | apartment? | |
| 14 | | MR. FLEMING: I think you are getting |
| 15 | confused. Off the record. | |
| 16 | | MR. TEHAN: All right, fine. |
| 17 | | (Off the record |
| 18 | | discussion.) |
| 19 | **Q.** | Do you have a memory, sir, of when the |
| 20 | studio unit was constructed? | |
| 21 | **A.** | **No.** |
| 22 | **Q.** | Was it there as long as you can remember? |
| 23 | **A.** | **Yes.** |

56

| | | |
|---|---|---|
| 1 | **Q.** | Did you play any role in constructing the |
| 2 | studio apartment? | |
| 3 | **A.** | **No.** |
| 4 | **Q.** | With respect to the main house nearest to |
| 5 | the street, was a permit pulled for demolition of | |
| 6 | the second floor, at some point? | |
| 7 | **A.** | **Yes.** |
| 8 | **Q.** | Who pulled that permit, if you know? |
| 9 | **A.** | **I believe I had my son go down and pull it.** |
| 10 | **Q.** | And that's Mark again? |
| 11 | **A.** | **Yes.** |
| 12 | **Q.** | And what were you planning to do with that |
| 13 | permit? | |
| 14 | **A.** | **Construct a whole new second floor on** |
| 15 | **there.** | |
| 16 | **Q.** | Why did you want to do that? |
| 17 | **A.** | **Because I guess you could call that style** |
| 18 | **of house a gamble house, and the way the pitch of** | |
| 19 | **the roof came down, you were losing a lot of your** | |
| 20 | **room space. It came down to the point where you** | |
| 21 | **only had say a couple of feet off the floor before** | |
| 22 | **the roof sloped back up again.** | |
| 23 | **Q.** | So all the rooms were cut into on the |

**57**

1  second floor by the roof?

2  **A.  Yes.**

3  **Q.**  And you were trying to get a larger living

4  area?

5  **A.  Yes.**

6  **Q.**  Why were you trying to get a larger living

7  area?

8  **A.  Because I don't like living in small rooms.**

9  **Q.**  Was this then a plan that you made for your

10  own later use of the house?

11  **A.  Yes.**

12  **Q.**  And you indicated that to the best of your

13  memory your son pulled that permit?

14  **A.  I had him go down to the town hall to do**

15  **it.**

16  **Q.**  And he was the applicant on the permit?

17  **A.  I don't recollect.**

18  **Q.**  You didn't sign to pull the permit, to the

19  best of your memory?

20  **A.  I don't know.**

21  **Q.**  In any event did some demolition work take

22  place?

23  **A.  Yes.**

**58**

1  **Q.**  And who did that work physically?

2  **A.  My son did a good part of it with his**

3  **friends. I went down there and helped him a little.**

4  **Q.**  Did the demolition that they did give rise

5  to any issues with the building inspector?

6  **A.  Yes.**

7  **Q.**  What were those, to your understanding?

8  **A.  When he showed up there one day --**

9  **Q.**  That's the building inspector?

10  **A.  Yes. Joel Reed.**

11  **Q.**  Go ahead.

12  **A.  We noticed or he noticed that the house had**

13  **a lot of defects in it from years ago where people**

14  **made additions or things in the house without a**

15  **permit and the whole thing was like ginny-rigged and**

16  **then he proceeded on telling us we would be better**

17  **off knocking the whole house down and building a**

18  **brand new spanking home. That was his exact words.**

19  **Q.**  What does ginny-rigged mean?

20  **A.  If you're supposed to have, like say your**

21  **house trusses are 16 inches on center, some of these**

22  **were like 24. That's against the building code**

23  **today.**

**59**

1  **Q.**  Did you ever hear the phrase mickey-moused?

2  **A.  Exactly. It's the same thing.**

3  **Q.**  At the time that Mr. Reed made this

4  suggestion, what was the status of the renovation?

5  Where was the project at?

6  **A.  The whole second floor was leveled.**

7  **Q.**  And what did you do to keep the first floor

8  from getting wet? Was it via tarps?

9  **A.  Yes.**

10  **Q.**  And was anybody living in the house at that

11  point?

12  **A.  No.**

13  **Q.**  And by this point had Manuel died?

14  **A.  No.**

15  **Q.**  Was he living with his girlfriend?

16  **A.  I believe so.**

17  **Q.**  After Mr. Reed made that statement, what

18  did you do?

19  **A.  Leveled the rest of the house.**

20  **Q.**  When you say leveled it, what was the

21  extent of the demolition?

22  **A.  Right to the foundation.**

23  **Q.**  And did that demolition of the entire

**60**

1  property, entire front property or front house down

2  to the foundation pose issues with the building

3  inspector?

4  **A.  No.**

5  **Q.**  At that point did you begin construction of

6  a new home there, of a new building?

7  **A.  No.**

8  **Q.**  What happened next?

9  **A.  The foundation was in an old house. Used**

10  **to be all stones and blocks. And I guess that year**

11  **that it was being done there was a lot of rain in**

12  **the area, and the cellar got a lot of water in the**

13  **cellar, the water buckled the cellar floor, which**

14  **was mickey-moused from the old days. And he**

15  **suggested, Joel Reed suggested that we take the**

16  **foundation down and build a new foundation. So**

17  **that's what happened.**

18  **Q.**  You mentioned, Mr. Jadlowe, that your son's

19  friends did most of the demo work on the second

20  floor. Is that true?

21  **A.  Yes.**

22  **Q.**  Did anyone, did you or your son pay anyone

23  to do that demolition work?

| | | 77 | | | | 79 |

**77**

1   not?

2   **A.   I believe so.**

3   **Q.**   Was the property insured by your

4   father-in-law up to the date you bought?

5   **A.   I don't remember.**

6   **Q.**   And in any event you have kept that house

7   or that property insured since 2002 through the

8   present time, correct?

9   **A.   Yes.**

10  **Q.**   To whom do you make your insurance

11  payments?

12  **A.   Costello Insurance Agency.**

13  **Q.**   And as you stated, it was a condition of

14  your mortgage, as you understood it, to keep the

15  house insured?

16  **A.   Yes.**

17  **Q.**   Now, the next numbers 6 through 13 on our

18  Exhibit 13 deal with mortgage payments, do they not?

19  **A.   Yes.**

20  **Q.**   And you have listed mortgage payments

21  running from 2002 to 2006, have you not?

22  **A.   Yes.**

23  **Q.**   And do you see the number 7 and 8 for 2003?

**78**

1   There are two different sets of mortgage figures?

2   **A.   They went up on the mortgage. Don't ask me**

3   **why.**

4   **Q.**   In any event, these are the monies that

5   you've paid on the house for mortgage payments since

6   you purchased it; is that correct?

7   **A.   Yes.**

8   **Q.**   And you still are paying a mortgage, true?

9   **A.   Yes.**

10  **Q.**   And again, I guess this is

11  self-explanatory, but 14 to 18 reflect the real

12  estate taxes on the property since you acquired an

13  interest in it; is that correct?

14  **A.   Yes.**

15  **Q.**   Now with respect to the real estate

16  insurance, the mortgage payments, and the real

17  estate taxes, have the amounts reflected in the

18  columns adjoining numbers 1 through 18 reflecting

19  insurance, mortgage, and real estate, actually been

20  paid?

21  **A.   Yes.**

22  **Q.**   Who paid them?

23  **A.   Me.**

**79**

1   **Q.**   Did anybody contribute to that?

2   **A.   No.**

3   **Q.**   Now, we have a reference at 19 construction

4   siding. Do you see that?

5   **A.   Yes.**

6   **Q.**   What type of siding is that?

7   **A.   Vinyl siding.**

8   **Q.**   And when was that done?

9   **A.   It's not done. It's all the boxes are**

10  **sitting in the garage.**

11  **Q.**   All right. Let me back up.

12  **A.   There is only one side of the house that is**

13  **maybe halfway, I believe it's the west side is about**

14  **halfway done up. That's when we got the cease and**

15  **desist.**

16  **Q.**   The front of the house faces what

17  direction, sir? The front of the house faces which

18  direction?

19  **A.   I believe it's south.**

20          MR. FLEMING: Off the record.

21          (Off the record

22          discussion.)

23  **Q.**   Part of the house has been sided?

**80**

1   **A.   No, no, not part. A small amount of the**

2   **house has.**

3   **Q.**   Just on one side?

4   **A.   Yes.**

5   **Q.**   And not even the whole side, true?

6   **A.   Yes.**

7   **Q.**   Now, what does the figure $9,118.18

8   reflect?

9   **A.   The cost of that siding to cover that**

10  **house.**

11  **Q.**   Not labor?

12  **A.   No.**

13  **Q.**   Next one you put at number 20, sir, is

14  construction plumbing. Do you see that?

15  **A.   Yes.**

16  **Q.**   That reflects a figure of $6,351?

17  **A.   Yes.**

18  **Q.**   What construction plumbing is referred to

19  in number 20?

20  **A.   Some of the plumbing has been done in**

21  **there. All the piping and everything, all the**

22  **showers, tubs, handles, and stuff like that.**

23  **Q.**   Have those items you just described been

79

1  installed?

2  **A.   Some of the plumbing has just been done.**

3  **That's it. The rest of the stuff is stored at the**

4  **pluming house.**

5  Q.   Let me backtrack.  On the construction

6  siding, to whom did you make that $9,118.18?

7  **A.   I believe it was D B S.**

8  Q.   Who is D B S?

9  **A.   Dartmouth Building Supply.**

10  Q.   And that's an amount that you actually paid

11  to them?

12  **A.   Yes.**

13  Q.   Do you owe them any money for siding?

14  **A.   No.**

15  Q.   On this construction plumbing, the amount

16  is $6,351, to whom did you pay that, sir?

17  **A.   Best Supply.**

18  Q.   And where is Best Supply located?

19  **A.   New Bedford.**

20  Q.   And did you actually pay them that amount?

21  **A.   Yes.**

22  Q.   Do you owe them any money for plumbing

23  supplies?

83

1  **A.   Yes.**

2  Q.   That would be more accurate?

3  **A.   Yes.**

4  Q.   Now, getting to the bottom of this at lines

5  23 to 27, this reflects your rent that you've

6  actually been paying in Fairhaven at the property

7  which you've lived for some 25 years; is that

8  correct?

9  **A.   Yes.**

10  Q.   Do I understand, Mr. Jadlowe, that you also

11  claim as a result of the town defendants' conduct

12  that you've suffered some emotional distress?

13  **A.   Yes. I have become a physical wreck.**

14  Q.   Can you explain what you mean by physical

15  wreck?

16  **A.   Well, I had made arrangements to go over**

17  **there. I told my landlady I'm moving, gave a**

18  **month's notice, and when all this stuff started with**

19  **the town I had to go back and practically beg her**

20  **because somebody had already put a down payment or**

21  **security deposit on the apartment.**

22  Q.   When did you give that month's notice?

23  **A.   I don't know. It was somewhere, maybe 2003**

80

1  **A.   No.**

2  Q.   At 21 we see construction plumbing again.

3  Do you see that?

4  **A.   Yes.**

5  Q.   In the amount of $4,500?

6  **A.   Yes.**

7  Q.   Who is that construction plumbing payment

8  made to?

9  **A.   I believe this belongs with construction**

10  **for Harvey Industries for the windows and doors.**

11  Q.   Let me ask you a clean question. Did you

12  pay the sum of $4,500 to Harvey Construction for

13  windows and doors?

14  **A.   I believe so.**

15  Q.   And did you actually pay that money?

16  **A.   Yes.**

17  Q.   Do you owe them any money?

18  **A.   No.**

19  Q.   Is there for column number 21 where it says

20  construction plumbing incorrect?

21  **A.   I believe so.**

22  Q.   And should it be as you have been using the

23  phrase construction doors and windows?

84

1  **or 4.**

2  Q.   Now at that point that you gave the

3  one-month notice, did you think you'd have a house

4  fully ready to live in?

5  **A.   Yes.**

6  Q.   We were talking about how you have become a

7  physical wreck, quote unquote, in your terms. What

8  did you mean by that?

9  **A.   I just got sick and tired of all this,**

10  **pardon the English, crap from the town, going to all**

11  **these meetings, getting shot down on everything,**

12  **aggravation from the names, especially the Frates in**

13  **the back. I just, I mean I just had it.**

14  Q.   I understand your answer. Let me ask you

15  this: Have you taken any medical treatment that you

16  claim was necessitated or required --

17  **A.   Yes. I'm taking pills right now for high**

18  **blood pressure.**

19  Q.   Let me complete my question. Have you

20  taken any medical treatment that you claim was

21  caused or necessitated by actions of the town and

22  its officials?

23  **A.   Yes. Pills for high blood pressure.**

**89**

Q. I either asked the question wrong or you heard it wrong. You're on Crestor for increased cholesterol?

A. **Crestor is for blood pressure.**

Q. Right. Are you on any medication for increased cholesterol?

A. **I believe it's one of those pills that I'm taking. I know there is one Avandia and I can't remember the other one.**

Q. And to your understanding has your cholesterol been reduced?

A. **Yes.**

Q. Have you taken any other medical treatment for high blood pressure, elevated blood sugar, and elevated cholesterol that we haven't discussed?

A. **No.**

Q. Have you ever taken any mental health therapy?

A. **No.**

Q. Have you ever taken any drugs that you understood to be prescribed to alter your mood or your mental state?

A. **No. I don't like taking pills period.**

**90**

Q. I understand.

A. **I take a lot of vitamins is the only thing I do.**

MR. TEHAN: Off the record a minute.

(Off the record discussion.)

Q. Just a couple more, if you please, Mr. Jadlowe. Would you agree that the monies that you spent for the siding and the plumbing materials will be monies that are spent -- strike that. Would you agree that the plumbing and siding materials that you spoke of will be used in the construction of the house when you are allowed to proceed with it and when you actually build it?

A. **The siding is sitting in the house.**

Q. Right, and you intend to put it on the house when you proceed?

A. **Hopefully.**

Q. Same with the plumbing materials?

A. **Yes.**

Q. Apart from the emotional distress that you discussed with me, and please take your time with this, is Exhibit 13 a fair, accurate, and complete

**91**

statement of your damages in this case?

A. **Yes.**

Q. One more second.

I have nothing further, sir.

MR. FLEMING: May I see the exhibits.

**Cross-Examination**

Q. (By Mr. Fleming) Now, Mr. Jadlowe, I am going to go over some documents. Exhibit 1, did you ever see that today?

MR. TEHAN: Before today you mean?

MR. FLEMING: Yes.

A. **No.**

Q. Did Mr. Parker ever show you a document like that?

A. **No.**

Q. Has Mr. Parker been the only attorney that you have retained to represent you in the criminal aspect -- strike that. Is Mr. Parker the only attorney that you have retained to represent your interest in the seizure by the government?

A. **Yes. Can I give you an answer why?**

Q. No. I don't know the potential answer. I'll stay away from it.

**92**

A. **No. It's going to be the truth why I retained him.**

Q. We'll get there. And he has never discussed with you --

A. **No. I never even saw that.**

Q. With regard to, and this is what I really want to get at, with regard to Exhibits 3 and 4, for the record Exhibit 3 is a deed from Mr. Oliveira to Mark Anthony Jadlowe and a deed from Mark Anthony Jadlowe back to Mr. Oliveira, and as my brother pointed out, the deeds are approximately close to a year, a little less than a year, 9 months apart. Is that right?

A. **Yes.**

Q. And my brother asked you questions about being aware of these. Do you recall ever seeing those documents before?

A. **No.**

Q. Except in my office?

A. **No.**

Q. And at the time, contemporaneously back in '98, '99 do you recall ever seeing them?

A. **No.**

# EXHIBIT B

BK 4218 PG 326
09/30/98 02:49 DOC. 26743
Bristol Co. S.D.

Know All Men By These Presents That I, Manuel C. Oliveira,

of Dartmouth,                                Bristol    County, Massachusetts,

~~for~~ for consideration paid S   love and affection

grant to Marc Anthony Jadlowe of 30 Arch Street, Dartmouth, Bristol
County, Massachusetts

xx

with quitclaim covenants

the land in DARTMOUTH, Bristol County, Massachusetts, with the buildings
thereon, bounded and described as follows:
(Description and encumbrances, if any)

Beginning at the northeasterly corner thereof at a point in the
south line of Arch Street 623.54 feet distant therein westerly from
its intersection with the west line of Bedford Street;

thence southerly 80 feet;

thence westerly 140.01 feet to the east line of Howland Avenue;

thence northerly 64.46 feet to an angle in said Avenue:

thence northeasterly therein 29.23 feet to said south line of Arch
Street;

thence easterly therein  145.93 feet to the point of beginning.

Being lots No. 458, 459, 460, 461 on plan of No. #2 of part of Howland
Farm, dated Dec. 28, 1915, filed in Bristol County S. D. Registry of
Deeds.

Being the same premises conveyed to me and my late wife, Mary C.
Oliveira by deed of Home Owners' Loan Corporation dated October 27, 1942
and recorded in said Registry, Book 860, Page 217.

My said late wife, Mary C. Oliveira died at New Bedford, Mass. on
April 6, 1992.



EXHIBIT 3
Jadlowe
10·27-06

BK  4218 PG 327

Witness . my....hand and seal this....28th..... day of.... September.........1998.

Fred M Thomas ............    Manuel C. Oliveira .....
Witness                          Manuel C. Oliveira

.........................................    .........................................

.........................................    .........................................


The Commonwealth of Massachusetts

Bristol          ss.              New Bedford, Sept. 28,  1998

Then personally appeared the above named    Manuel C. Oliveira

and acknowledged the foregoing instrument to be  his. free act and deed

before me

Fred M Thomas .........................
Fred M. Thomas  -  Notary Public ─XXXXXXXXXXXXX
                      TNE
                      My Commission expires  Aug. 26, XX 2005.

4

# EXHIBIT C

BK 4453 PG 214
06/30/99 12:23 DOC. 19902
Bristol Co. S.D.

## QUITCLAIM DEED

KNOW ALL MEN BY THESE PRESENTS, THAT I, MARC ANTHONY JADLOWE, of Dartmouth, Bristol County, Massachusetts,

for consideration paid, and in full consideration of love and affection,

grant to MANUEL C. OLIVEIRA, of 30 Arch Street, South Dartmouth, Massachusetts 02748, in fee simple,

with quitclaim covenants

the land in said Dartmouth, with the buildings thereon, bounded and described as follows:

BEGINNING at the northeasterly corner thereof at a point in the south line of Arch Street 623.54 feet distant therein westerly from its intersection with the west line of Bedford Street;

thence southerly 80 feet;

thence westerly 140.01 feet to the east line of Howland Avenue;

thence northerly 64.46 feet to an angle in said Avenue;

thence northeasterly therein 29.23 feet to said south line of Arch Street;

thence easterly therein 145.93 feet to the pint of beginning.

Being lots No. 458, 459, 460, 461 on plan of No. #2 of part of Howland Farm, dated December 28, 1915, filed in Bristol County S. D. Registry of Deeds.

Being the same premises conveyed to me by deed of said Manuel C. Oliveira, dated September 28, 1998, and recorded in said Registry in Book 4218, Page 326.

Address of granted premises: 30 Arch Street, South Dartmouth, Massachusetts 02748. This address is not part of this conveyance; its accuracy has not been verified.

NO TITLE SEARCH WAS PERFORMED IN THE PREPARATION OF THIS DEED.

Witness my hand and seal this 29ᵗ day of June, 1999.

_____          _____
WITNESS                          MARC ANTHONY JADLOWE

EXHIBIT 4
Jadlowe
10-27-06 CO

Jadlowe partial title
07/04/2006
Page 22 of 27

5

BK  4453 PG 215

COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                                     New Bedford, June $2\eta$ , 1999

    Then personally appeared the above-named MARC ANTHONY JADLOWE and acknowledged the foregoing instrument to be his free act and deed a before me

DAVID E. RUSSELL
Notary Public
My commission expires: $3/16/01$

Page 2
RUBITZKY A RUSSELL • ATTORNEYS AT LAW • 374 UNION STREET, NEW BEDFORD MA 02740 • (508) 997-7994

Jadlowe partial title
07/04/2006
Page 23 of 27

b

# EXHIBIT D

BK 4453 PG 216
06/30/99 12:24 DOC. 19903
Bristol Co. S.D.

## QUITCLAIM DEED

KNOW ALL MEN BY THESE PRESENTS, THAT I, MANUEL C. OLIVEIRA, of Dartmouth, Bristol County, Massachusetts,

for consideration paid, and in full consideration of love and affection,

grant to myself, MANUEL C. OLIVEIRA, of 30 Arch Street, South Dartmouth, Massachusetts 02748, an estate for and during the term of my natural life, together with full power to sell, lease, mortgage, convey or otherwise transfer the whole or any part thereof, in fee simple, at my discretion, with the remainder in fee to MARC ANTHONY JADLOWE, of 30 Arch Street, South Dartmouth, Massachusetts 02748. It is intended that for and during the term of my life estate, the signature or other assent of the remainder interest holder shall not be required to effectuate any sale, lease, mortgage, conveyance or other transfer of the whole or any part of the property herein transferred,

with quitclaim covenants

the land in said Dartmouth, with the buildings thereon, bounded and described as follows:

BEGINNING at the northeasterly corner thereof at a point in the south line of Arch Street 623.54 feet distant therein westerly from its intersection with the west line of Bedford Street;

thence southerly 80 feet;

thence westerly 140.01 feet to the east line of Howland Avenue;

thence northerly 64.46 feet to an angle in said Avenue;

thence northeasterly therein 29.23 feet to said south line of Arch Street;

thence easterly therein 145.93 feet to the pint of beginning.

Being lots No. 458, 459, 460, 461 on plan of No. #2 of part of Howland Farm, dated December 28, 1915, filed in Bristol County S. D. Registry of Deeds.

Being the same premises conveyed to me by deed of said Marc Anthony Jadlowe, dated June 29, 1999, and recorded in said Registry in Book 4453, Page 214.

EXHIBIT 5
Jadlowe
10-27-06 (W)

Jadlowe partial title
07/04/2006
Page 24 of 27

7

BK  4453 PG 217

Address of granted premises: 30 Arch Street, South Dartmouth, Massachusetts 02748.
This address is not part of this conveyance; its accuracy has not been verified.

NO TITLE SEARCH WAS PERFORMED IN THE PREPARATION OF THIS
DEED.

Witness my hand and seal this 27 day of June, 1999.

_____
WITNESS

_____
MANUEL C. OLIVEIRA

COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                          New Bedford, June 25 , 1999

Then personally appeared the above-named MANUEL C. OLIVEIRA

and acknowledged the foregoing instrument to be his free act and deed, before me

_____
DAVID E. RUSSELL
Notary Public
My commission expires: 8/16/02

Page 2
RUSITZKY & RUSSELL • ATTORNEYS AT LAW • 324 UNION STREET, NEW BEDFORD MA 02740 • (508) 997-7864

Jadlowe partial title
07/04/2006
Page 25 of 27

8

# EXHIBIT E

BK 4773 PG 151
09/12/00 02:12 DOC. 21910
Bristol Co. S.D.

## MASSACHUSETTS QUITCLAIM DEED

I, MANUEL C. OLIVEIRA,

of Dartmouth,                                                    Bristol County, Massachusetts

being unmarried, for consideration paid, and in full consideration of $1.00

grant to THOMAS JAMES JADLOWE,

of 198 Main Street, Fairhaven, Massachusetts 02719

                                                    with *quitclaim covenants*

the land, with any buildings thereon, in Dartmouth, Bristol County, Commonwealth of
Massachusetts, bounded and described as follows:

BEGINNING at the northeasterly corner thereof at a point in the south line of Arch Street, six
hundred twenty-three and 54/100 (623.54) feet distant therein westerly from its intersection with
the west line of Bedford Street; thence

SOUTHERLY        eighty (80) feet; thence

WESTERLY         one hundred forty and 01/100 (140.01) feet to the east line of Howland
                 Avenue; thence

NORTHERLY        sixty-four and 46/100 (64.46) feet to an angle in said Avenue; thence

NORTHEASTERLY    therein twenty-nine and 23/100 (29.23) feet to said south line of Arch
                 Street; and thence

EASTERLY         therein one hundred forty-five and 93/100 (145.93) feet to the point of
                 beginning.

BEING Lots No. 458, 459, 460 and 461 on Plan of No. 2 of Part of Howland Farm, dated
December 28, 1915, filed in the Bristol County (S.D. Registry of Deeds.

FOR TITLE, see deed recorded on June 30, 1999 in Bristol County (S.D.) Registry of Deeds in
Book 4453, Page 216.

SUBJECT to the fiscal year 2001 real estate taxes which the grantee assumes and agrees to pay.

TITLE NOT EXAMINED BY THE PREPARER OF THIS DEED.

     *WITNESS* my hand and seal this _12th_ day of September, 2000.

_Dorothy S. Carvalho_                        _Manuel C. Oliveira_
Witness                                       Manuel C. Oliveira


### THE COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                                              September _12_, 2000

     Then personally appeared the above-named Manuel C. Oliveira and acknowledged the
foregoing instrument to be his free act and deed, before me,

                         _Dorothy S. Carvalho_
                                   Notary Public
My commission expires: _03/08/01_

Jadlowe partial title
07/04/2006
Page 5 of 27

*9*

# EXHIBIT E

BK  4773 PG  151
09/12/00 02:12 DOC. 21910
Bristol Co. S.D.

## MASSACHUSETTS QUITCLAIM DEED



I, MANUEL C. OLIVEIRA,

of Dartmouth,                                                    Bristol County, Massachusetts

being unmarried, for consideration paid, and in full consideration of $1.00

grant to THOMAS JAMES JADLOWE,

of 198 Main Street, Fairhaven, Massachusetts 02719

                                                    with *quitclaim covenants*

the land, with any buildings thereon, in Dartmouth, Bristol County, Commonwealth of
Massachusetts, bounded and described as follows:

BEGINNING at the northeasterly corner thereof at a point in the south line of Arch Street, six
hundred twenty-three and 54/100 (623.54) feet distant therein westerly from its intersection with
the west line of Bedford Street; thence

SOUTHERLY          eighty (80) feet; thence

WESTERLY           one hundred forty and 01/100 (140.01) feet to the east line of Howland
                   Avenue; thence

NORTHERLY          sixty-four and 46/100 (64.46) feet to an angle in said Avenue; thence

NORTHEASTERLY  therein twenty-nine and 23/100 (29.23) feet to said south line of Arch
                   Street; and thence

EASTERLY           therein one hundred forty-five and 93/100 (145.93) feet to the point of
                   beginning.

BEING Lots No. 458, 459, 460 and 461 on Plan of No. 2 of Part of Howland Farm, dated
December 28, 1915, filed in the Bristol County (S.D. Registry of Deeds.

FOR TITLE, see deed recorded on June 30, 1999 in Bristol County (S.D.) Registry of Deeds in
Book 4453, Page 216.

SUBJECT to the fiscal year 2001 real estate taxes which the grantee assumes and agrees to pay.

TITLE NOT EXAMINED BY THE PREPARER OF THIS DEED.

*WITNESS* my hand and seal this _12th_ day of September, 2000.

_____          _____
Witness                            Manuel C. Oliveira

### THE COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                                           September _12_, 2000

          Then personally appeared the above-named Manuel C. Oliveira and acknowledged the
foregoing instrument to be his free act and deed, before me,

                              _____
                                        Notary Public
          My commission expires:  _03/02/01_

9

# EXHIBIT F

BK 4890 PG 10
02/02/01 02:10 DOC. 2908
Bristol Co. S.D.

MASSACHUSETTS QUITCLAIM DEED

I, THOMAS JAMES JADLOWE

of Fairhaven                                          Bristol County, Massachusetts,

*being unmarried,* for consideration paid, and in full consideration of One ($1.00) Dollar

grant to Manuel C. Oliveira

at 30 Arch Street, Dartmouth, Massachusetts          with Quitclaim Covenants

The land in Dartmouth, Bristol County, Commonwealth of Massachusetts, with all buildings
thereon, bounded and described as follows:

(Description and encumbrances, if any)

BEGINNING at the northeasterly corner thereof at a point in the south line of Arch Street, Six
Hundred Twenty-three and 54/100 (623.54) feet distant therein westerly from its intersection
with the west line of Bedford Street; thence

SOUTHERLY         Eighty (80) feet; thence

WESTERLY          One Hundred Forty and 01/100 (140.01) feet to the east line of Howland
                  Avenue; thence

NORTHERLY         Sixty-four and 46/100 (64.46) feet to an angle in said Avenue; thence

NORTHEASTERLY     therein Twenty-nine and 23/100 (29.23) feet to said south line of Arch
                  Street; and thence

EASTERLY          therein One Hundred Forty-five and 93/100 (145.93) feet to the point of
                  beginning.

BEING Lot Nos. 458, 459, 460 and 461 on Plan of No. 2 of part of Howland Farms, dated
December 28, 1915 and filed in the Bristol County (S.D.) Registry of Deeds.

For my title, see Deed dated September 12, 2000 and recorded in the Bristol County (S.D.)
Registry of Deeds in Book 4773, Page 151.

Subject to the real estate taxes for fiscal year 2001 which the grantee hereby assumes and agrees
to pay.

TITLE NOT EXAMINED BY THE PREPARER OF THIS DEED.

. *WITNESS* our hands and seals this 1st day of February, 2001.

_____          *Thomas James Jadlowe*

*COMMONWEALTH OF MASSACHUSETTS*

BRISTOL, SS.                                        February 1, 2001

Then personally appeared the above-named Thomas James Jadlowe and acknowledged
the foregoing instrument to be his free act and deed, before me

                                    *John A. Thomas*
                                    Notary Public

My Commission Expires: *May 3, 1 007*

Jadlowe partial title
07/04/2006
Jadlowe title interest
Page 6 of 13

10


EXHIBIT 7

# EXHIBIT G

BK 4926 PG 25
03/16/01 04:03 DOC. 6307
Bristol Co. S.D.



## MASSACHUSETTS QUITCLAIM DEED

I, MANUEL C. OLIVEIRA

of Dartmouth                                        Bristol County, Massachusetts,

*being unmarried,* for consideration paid, and in full consideration of $160,000.00

grant to Thomas James Jadlowe

at 198 North Main Street, Fairhaven, Massachusetts                with Quitclaim Covenants

The land in Dartmouth, Bristol County, Commonwealth of Massachusetts, with all buildings thereon, described as follows:

(Description and encumbrances, if any)

### SEE EXHIBIT "A" ATTACHED HERETO



*WITNESS* our hands and seals this 16th   day of March, 2001.

_____          *Manuel C. Oliveira*

_____          _____

### *COMMONWEALTH OF MASSACHUSETTS*

BRISTOL, SS.                                        March  16 , 2001

    Then personally appeared the above-named Manuel C. Oliveira and acknowledged the foregoing Instrument to be his free act and deed, before me,

_____
Notary Public

My Commission Expires:  10/2/03

Jadlowe partial title
07/04/2006
Jadlowe title infsageqquest
Page 7 of 13



BK 4926 PG 26

### EXHIBIT "A"

The land in Dartmouth, Bristol County, Commonwealth of Massachusetts, with all buildings thereon, bounded and described as follows:

BEGINNING at the northeasterly corner thereof at a point in the south line of Arch Street, Six Hundred Twenty-three and 54/100 (623.54) feet distant therein westerly from its intersection with the west line of Bedford Street; thence

| | |
|---|---|
| SOUTHERLY | Eighty (80) feet; thence |
| WESTERLY | One Hundred Forty and 01/100 (140.01) feet to the east line of Howland Avenue; thence |
| NORTHERLY | Sixty-four and 46/100 (64.46) feet to an angle in said Avenue; thence |
| NORTHEASTERLY | therein Twenty-nine and 23/100 (29.23) feet to said south line of Arch Street; and thence |
| EASTERLY | therein One Hundred Forty-five and 93/100 (145.93) feet to the point of beginning. |

BEING Lot Nos. 458, 459, 460 and 461 on Plan of No. 2 of part of Howland Farms, dated December 28, 1915 and filed in the Bristol County (S.D.) Registry of Deeds.

For my title, see Deed dated February 1, 2001 and recorded in the Bristol County (S.D.) Registry of Deeds in Book 4890, Page 10.

Subject to the real estate taxes for fiscal year 2001, which the grantee hereby assumes and agrees to pay.

Jadlowe partial title
07/04/2006
Jadlowe title info request
Page 8 of 13

/ 2

# EXHIBIT H

STANDARD CERTIFICATE OF DEATH

REGISTRY OF VITAL RECORDS AND STATISTICS

1372

REGISTERED NUMBER

STATE USE ONLY

| DECEDENT - NAME | FIRST | MIDDLE | | LAST | SEX | DATE OF DEATH (Mo., Day, Yr.) |
|---|---|---|---|---|---|---|
| 1 | MANUEL | CASIO | | OLIVEIRA | 2 M | 3 NOVEMBER 30, 2003 |

| PLACE OF DEATH (City/Town) | | | | HOSPITAL OR OTHER INSTITUTION |
|---|---|---|---|---|
| 4a NEW BEDFORD | 4b COUNTY OF DEATH BRISTOL | | 4c ST. LUKE'S HOSPITAL | |

PLACE OF DEATH (Check only one): HOSPITAL: ☒ Inpatient ☐ ER/Outpatient ☐ DOA OTHER ☐ Nursing Home ☐ Residence ☐ Other (Specify)

| SOCIAL SECURITY NUMBER | IF US WAR VETERAN SPECIFY WAR |
|---|---|
| 6 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 | 7 |

WAS DECEDENT OF HISPANIC ORIGIN? ☐ Yes, Specify Puerto Rican, Dominican, Cuban, etc.) ☒ NO ☐ YES 5a Specify

RACE (e.g. White, Black, American Indian, etc.) (Specify) WHITE

DECEDENT'S EDUCATION (Highest Grade Completed) Elementary Sec (0-12) | College (1-4, 3+) 9 8

| AGE - Last Birthday (Yrs.) | UNDER 1 YEAR MOS. | DAYS | UNDER 1 DAY HOURS | MINS | DATE OF BIRTH (Mo., Day, Yr.) | BIRTHPLACE (City and State or Foreign Country) |
|---|---|---|---|---|---|---|
| 10a 95 | | | | | 10b JAN. 20, 1908 | 11 AZORES |

| MARRIED, NEVER MARRIED WIDOWED OR DIVORCED | LAST SPOUSE (if wife, give maiden name) | USUAL OCCUPATION (Prior - if Retired) | KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| 12 WIDOWED | 13 MARY CARVALHO | 14a PAINTER | 14b BOATING |

| RESIDENCE - NO. & ST., CITY/TOWN, COUNTY, STATE/COUNTRY | | | ZIP CODE |
|---|---|---|---|
| 15a 30 ARCH STREET, DARTMOUTH, BRISTOL, MASSACHUSETTS | | | 15b 02748 |

| FATHER - FULL NAME | STATE OF BIRTH (if not in US, name country) | MOTHER - NAME (GIVEN) (MAIDEN) | STATE OF BIRTH (if not in this US, name country) |
|---|---|---|---|
| 16 FRANCISCO OLIVEIRA | 17 AZORES | 18 RITA SYLVIA | 19 AZORES |

| INFORMANT'S NAME | MAILING ADDRESS - NO. & ST., CITY/TOWN, STATE, ZIP CODE | RELATIONSHIP |
|---|---|---|
| 20 MARC JADLOWE | 21 30 ARCH ST., DARTMOUTH, MA 02748 | 22 GRANDSON |

METHOD OF IMMEDIATE DISPOSITION: ☒ BURIAL ☐ CREMATION ☐ ENTOMBMENT ☐ REMOVAL FROM STATE ☐ DONATION ☐ OTH. SPEC.

| FUNERAL SERVICE LICENSEE OR OTHER DESIGNEE | LICENSE # |
|---|---|
| 24 SUMNER JAMES WARING, III | 25 6480 |

| PLACE OF DISPOSITION (Name of Cemetery, Crematory or other) | LOCATION (City/Town, State) |
|---|---|
| 26a SOUTH DARTMOUTH CEMETERY | 26b DARTMOUTH, MASSACHUSETTS |

| DATE OF DISPOSITION (Mo., Day, Yr.) | NAME AND ADDRESS OF FACILITY OR OTHER DESIGNEE | MA 02748 |
|---|---|---|
| 27 DECEMBER 5, 2003 | 28a/b DARTMOUTH FUNERAL HOME 230 RUSSELLS MILLS RD., DARTMOUTH | |

29 PART I - Enter the diseases, injuries, or complications that caused the death. Do not use only the mode of dying, such as cardiac or respiratory arrest, shock or heart failure. List only one cause on each line (a through d) PRINT OR TYPE LEGIBLY.

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) a. REBPURTTURA FAUURE | DUE TO (OR AS A CONSEQUENCE OF) | 10 HOURS |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST b. CARAYC ARRET | DUE TO (OR AS A CONSEQUENCE OF) | (VARY) |
| c. | DUE TO (OR AS A CONSEQUENCE OF) | |
| d. | | |

PART II - Other significant conditions contributing to death but not resulting in underlying cause given in Part I.

30 4. CHRONIC ATRIAL FIBRILLATION 2. OLA STROKES

| WAS AUTOPSY PERFORMED? (Yes or No) | WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? (Yes or No) |
|---|---|
| 31 NO | 32 |

| MED. EXAM. NOTIFIED? (Yes or No) 33 NO | MANNER OF DEATH ☒ NATURAL ☐ HOMICIDE ☐ COULD NOT BE DETERMINED ☐ ACCIDENT ☐ SUICIDE ☐ PENDING INVESTIGATION | DATE OF INJURY (Mo., Day, Yr.) | TIME OF INJURY | INJURY AT WORK (Yes or No) |
|---|---|---|---|---|
| | | 35a | 35b | M 35c |

| DESCRIBE HOW INJURY OCCURRED | PLACE OF INJURY (At home, farm, street, factory, office bldg, etc.) Specify. | LOCATION (No. & St. City/Town, State) |
|---|---|---|
| 35d | 35e | 35f |

36a To the best of my knowledge, death occurred at the time, date, and place and due to the cause(s) stated. (Signature and Title) DOUGLAS M. [signature]

37a On the basis of examination and/or investigation in my opinion death occurred at the time, date, and place and due to the cause(s) stated. (Signature and Title)

| DATE SIGNED (Mo., Day, Yr.) 36b DOUGLAS M. 30, 2003 | HOUR OF DEATH 36c 5 PL M | DATE SIGNED (Mo., Day, Yr.) 37b | HOUR OF DEATH 37c M |
|---|---|---|---|

| NAME OF ATTENDING PHYSICIAN IF NOT CERTIFIER 36d ROBERT VUCESS MD | | PRONOUNCED DEAD (Mo., Day, Yr.) 37d | PRONOUNCED DEAD (M) 37e M |
|---|---|---|---|

| NAME AND ADDRESS OF CERTIFYING PHYSICIAN OR MEDICAL EXAMINER (Type or Print) | | LICENSE NO. OF CERTIFIER |
|---|---|---|
| 38 VICTOR NAVLIXY L63 RIVER ROAD NEO BEFER, MA | | 39 54176 |

| WAS THERE A PRONOUNCEMENT FORM? (Yes or No) 40a NO | IF YES, DATE PRONOUNCED 40b | IF YES, TIME PRONOUNCED 40c M | 40d NAME OF PRONOUNCER | TITLE ☐ R.N. ☐ P.A. |
|---|---|---|---|---|

| DATE BURIAL PERMIT ISSUED SIGNATURE OF CITY OR TOWN CLERK OR HEALTH AGENT DEC 31 2003 #1072 | RECEIVED IN THE CITY/TOWN OF New Bedford CLERK'S SIGNATURE Rita D. Arruda | DATE OF RECORD Dec. 3, 2003 |
|---|---|---|

# EXHIBIT I

MAG

## United States District Court
## District of Massachusetts (Boston)
## CRIMINAL DOCKET FOR CASE #: 1:05-cr-10306-RGS-10

Case title: USA v. Amaral et al
Magistrate judge case number: 1:05-mj-00255-JLA

Date Filed: 11/09/2005

| Date Filed | # | Docket Text |
|---|---|---|
| 11/06/2005 | 1 | SEALED COMPLAINT as to Kenny Amaral (1), Craig Andrade (2), Ethan Cohen (3), John Ferreira, Jr (4), Brandin Gonsalves (5), Mark Jadlowe (6), Robert Rogers (7). (Attachments: # 1 Affidavit) (Hurley, Virginia) [1:05-mj-00255-JLA] (Entered: 11/09/2005) |
| 11/06/2005 | 4 | MOTION to Seal Case as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogersby USA. (Hurley, Virginia) [1:05-mj-00255-JLA] (Entered: 11/09/2005) |
| 11/06/2005 | | Magistrate Judge Joyce London Alexander : ElectronicORDER entered granting 4 Motion to Seal Case as to Kenny Amaral (1), Craig Andrade (2), Ethan Cohen (3), John Ferreira Jr. (4), Brandin Gonsalves (5), Mark Jadlowe (6), Robert Rogers (7) (Hurley, Virginia) [1:05-mj-00255-JLA] (Entered: 11/09/2005) |
| 11/07/2005 | | Arrest of Kenny Amaral, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers (Hurley, Virginia) [1:05-mj-00255-JLA] (Entered: 11/09/2005) |
| 11/07/2005 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Joyce London Alexander :Initial Appearance as to Kenny Amaral, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers held on 11/7/2005. Detention Hearing as to Kenny Amaral, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers held on 11/7/2005. Defendant Jadlowe to file financial affidavit by 11/9/05 to be appointed counsel. Defendants Cohen and Amaral complete affidavits and Court orders counsel to be appointed. Attorney Peter Krupp appears for defendant Cohen and FDP Fried appears for defendant Amaral. Defendants Ferreira and Rogers to retain counsel. Government moves for detention. Defendants detained pending further hearing. Detention Hearing set for 11/9/2005 03:30 PM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (Digital Recording) (Hurley, Virginia) [1:05-mj-00255-JLA] (Entered: 11/09/2005) |
| 11/07/2005 | 7 | MOTION for Partial Lifting of Seal as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogersby USA. (Hurley, Virginia) [1:05-mj-00255-JLA] (Entered: 11/09/2005) |
| 11/07/2005 | | Magistrate Judge Joyce London Alexander : ElectronicORDER entered granting 7 Motion for Partial Lifting of Seal as to Kenny Amaral (1), Craig Andrade (2), Ethan Cohen (3), John Ferreira Jr. (4), Brandin Gonsalves (5), Mark Jadlowe (6), Robert Rogers (7) (Hurley, Virginia) [1:05-mj-00255-JLA] (Entered: 11/09/2005) |
| 11/09/2005 | 9 | INDICTMENT as to Kenny Amaral (1) count(s) 1, 2, 8, Craig Andrade (2) count(s) 1, 2, 8, Javon Brown (3) count(s) 1, Ethan Cohen (4) count(s) 9, 10, 11, Tyson Depina (5) count(s) 2, John Ferreira, Jr (6) count(s) 1, 2, 8, Scott Gaylord (7) count(s) 1, 3, Vincent Gomes (8) count(s) 1, 3, 5-6, 7, Brandin Gonsalves (9) count(s) 1, 2, 3, 8, Mark Jadlowe (10) count(s) 1, 8, Jessica Monteiro (11) count(s) 1, 3, 5, Terrance Moore (12) count(s) 1, 7, Robert Rogers (13) count(s) 1, 8, Rodney Santos (14) count(s) 1, John Sylvia (15) count(s) 1, 3, 4, 5-6. (Attachments: # 1) (Gawlik, Cathy) (Entered: 11/10/2005) |
| 11/10/2005 | 8 | MOTION to Unseal Case as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogersby USA. (Gawlik, Cathy) [1:05-mj-00255-JLA] (Entered: 11/10/2005) |
| 11/10/2005 | | Judge Robert B. Collings : ElectronicORDER entered granting 8 Motion to Unseal Case as to Kenny Amaral (1), Craig Andrade (2), Ethan Cohen (3), John Ferreira Jr. (4), Brandin Gonsalves (5), Mark Jadlowe (6), Robert Rogers (7) (Gawlik, Cathy) [1:05-mj-00255-JLA] (Entered: 11/10/2005) |
|  |  |  |

| 11/10/2005 | 10 | Judge Richard G. Stearns : ORDER entered. ORDER REFERRING CASE to Magistrate Judge Joyce London Alexander Reason for referral: pretrial proceedings as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina (Gawlik, Cathy) (Entered: 11/10/2005) |
|---|---|---|
| 11/15/2005 | | ELECTRONIC NOTICE OF HEARING as to John Ferreira, Jr, Mark Jadlowe, John Sylvia, Vincent Gomes, Scott Gaylord: Arraignment and Detention Hearing SET for 11/30/2005 @ 10:30 AM in Courtroom 24 before Judge Magistrate Judge Joyce London Alexander. (JLA, intl) (Entered: 11/16/2005) |
| 11/15/2005 | | Attorney update in case as to Mark Jadlowe. Attorney Keith S. Halpern for Mark Jadlowe added. (Lovett, Jarrett) (Entered: 11/23/2005) |
| 11/15/2005 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Joyce London Alexander :Detention Hearing as to Mark Jadlowe held on 11/15/2005. Defendant requests continuance of detention hearing. Arraignment set for 11/30/2005 10:30 AM before Magistrate Judge Joyce London Alexander. Detention Hearing set for 11/30/2005 10:30 AM before Magistrate Judge Joyce London Alexander. Attorney Keith Halpern enters appearance for detention hearing only. (Hurley, Virginia) (Entered: 11/28/2005) |
| 11/15/2005 | 37 | NOTICE OF ATTORNEY APPEARANCE: Keith S. Halpern appearing for Mark Jadlowe. for detention hearing only. (Hurley, Virginia) (Entered: 11/28/2005) |
| 11/23/2005 | | Attorney update in case as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr. Brandin Gonsalves. Mark Jadlowe. Robert Rogers, John Sylvia, Vincent Gomes. Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina. Attorney Ann Taylor for USA added. (Lovett, Jarrett) (Entered: 11/23/2005) |
| 11/28/2005 | 27 | MOTION to Withdraw as Attorney by Keith Halpern. as to Mark Jadlowe. (Halpern, Keith) Additional attachment(s) added on 12/2/2005 (Flaherty, Elaine). (Entered: 11/28/2005) |
| 11/30/2005 | | ELECTRONIC NOTICE OF HEARING as to Mark Jadlowe, John Sylvia, Vincent Gomes: Detention Hearing CONTINUED to 12/6/2005 @ 10:00 AM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (JLA, intl) (Entered: 12/01/2005) |
| 11/30/2005 | | Magistrate Judge Joyce London Alexander : Electronic ORDER entered granting 27 Motion to Withdraw as Attorney (Keith Halpern) as to defendant Mark Jadlowe (10) (Lovett, Jarrett) (Entered: 12/02/2005) |
| 11/30/2005 | | Attorney update in case as to Mark Jadlowe. Attorney Keith S. Halpern terminated. (Lovett, Jarrett) (Entered: 12/02/2005) |
| 11/30/2005 | | Attorney update in case as to Mark Jadlowe. Attorney James L. Sultan for Mark Jadlowe added. (Lovett, Jarrett) (Entered: 12/02/2005) |
| 11/30/2005 | | ElectronicClerk's Notes for proceedings held before Judge Joyce London Alexander :Arraignment as to Mark Jadlowe (10) Count 1,8 and John Sylvia (15) Count 1,5-6 and Vincent Gomes (8) Count 1,5-6 held on 11/30/2005, Maximum penalties stated by Gov't, Deft's Plea NG; Deft request continuance on detention hearing, dft's consent to detention pending hearing; Detention Hearing as to Mark Jadlowe, John Sylvia, Vincent Gomes to be held on 12/6/05 @ 10AM (Digital Recording.) (Lovett, Jarrett) (Entered: 12/05/2005) |
| 11/30/2005 | 53 | Magistrate Judge Joyce London Alexander : ORDER entered. CJA 20 as to Mark Jadlowe: Appointment of Attorney James L. Sultan for Mark Jadlowe. (Lovett, Jarrett) (Entered: 12/13/2005) |
| 12/02/2005 | | Notice of correction to docket made by Court staff. Correction: document #27 corrected because: unsigned as to Mark Jadlowe (Flaherty, Elaine) (Entered: 12/02/2005) |
| 12/06/2005 | | ELECTRONIC NOTICE OF HEARING as to Mark Jadlowe, John Sylvia, Vincent Gomes: INITIAL Status Conference SET for 1/10/2006 @ 02:15 PM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (JLA, intl) (Entered: 12/08/2005) |
| 12/06/2005 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Joyce London Alexander :Detention Hearing as to Mark Jadlowe held on 12/6/2005. AUSA Connolly, PTS, Atty Sultan for the Deft. Deft sworn, defendant consents to voluntary detention pending report from PTS Re: residency issue. Initial Status Conference set for 1/10/06 @ 2:15 PM. (Lovett, Jarrett) (Entered: 12/13/2005) |

| 12/19/2005 | 59 | Letter (non-motion) regarding discovery documents as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina (Flaherty, Elaine) (Entered: 12/20/2005) |
|---|---|---|
| 12/20/2005 | 60 | BILL OF PARTICULARS as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina (Zacks, Jennifer) (Entered: 12/20/2005) |
| 12/20/2005 | 61 | MOTION to Impound as to Mark Jadlowe. filed under seal by USA. (Johnson, Mary) Modified on 12/21/2005 (Johnson, Mary). (Entered: 12/21/2005) |
| 12/20/2005 | 62 | Ex-Parte Application filed under seal by USA. as to Mark Jadlowe. (Johnson, Mary) (Entered: 12/21/2005) |
| 12/20/2005 | 63 | Ex Parte MOTION as to Mark Jadlowe filed by USA. (Johnson, Mary) (Entered: 12/21/2005) |
| 12/21/2005 | | Judge Richard G. Stearns : Electronic ORDER entered granting 61 Motion to Seal as to Mark Jadlowe (10). (Johnson, Mary) (Entered: 12/21/2005) |
| 12/21/2005 | 65 | Judge Richard G. Stearns : ORDER entered. as to Mark Jadlowe. (Johnson, Mary) (Entered: 12/21/2005) |
| 12/21/2005 | | Judge Richard G. Stearns : Electronic ORDER entered granting 63 Motion as to Mark Jadlowe (10). (Johnson, Mary) (Entered: 12/21/2005) |
| 12/21/2005 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Joyce London Alexander : BailHearing as to Mark Jadlowe held on 12/21/2005: AUSA Bower standing in for Connolly, Atty Sultan for the Defl., PTS. Gov't & Deft agree to Deft's release on a $10,000 unsecured bond and additional conditions of release. Initial Status Conference set for 1/10/06 @ 2:15PM (Digital Reeording.) (Lovett, Jarrett) (Entered: 12/27/2005) |
| 12/22/2005 | 69 | Unsecured Bond Entered as to Mark Jadlowe in amount of $ 10,000. (Lovett, Jarrett) (Entered: 12/27/2005) |
| 12/22/2005 | 70 | Magistrate Judge Joyce London Alexander : ORDER entered. ORDER Setting Conditions of Release as to Mark Jadlowe. (Lovett, Jarrett) (Entered: 12/27/2005) |
| 12/22/2005 | 84 | GOVERNMENT'S NOTICE re automatic disclosure pursuant to Local Rule 116.1 as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Tyson Depina (Lovett, Jarrett) (Entered: 01/09/2006) |
| 01/10/2006 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Joyce London Alexander :Status Conference as to Kenny Amaral represented by atty Fried, Craig Andrade represented by atty Natola, Ethan Cohen represented by atty Krupp, Mark Jadlowe represented by atty Sultan, Robert Rogers represented by atty Krasnoo, John Sylvia represented by atty Norris who was not present (Court informed that counsel had a Trial at Peabody District Court, atty Krasnoo covering for atty Norris. Vincent Gomes represented by atty LaRocque, Rodney Santos represented by atty Budreau who was out ill, atty Sultan covering for atty Budreau, Jessica Monteiro represented by atty Palmer, Terrance Moore represented by atty Fienberg, Scott Gaylord represented by atty Gormley who was not present, atty LaRocque covering for atty Gormley, Tyson Depina represented by atty Zalkind who was not present, atty from office covering, held on 1/10/2006. AUSA Connolly for the Gov't. Gov't to file an Initial Status Report & Motion to Exclude Time. Interim Status Conference set for 3/28/06 @ 2:00 PM (Digital Recording.) (Lovett, Jarrett) (Entered: 01/11/2006) |
| 01/10/2006 | | NOTICE OF HEARING as to Kenny Amaral, Craig Andrade, Ethan Cohen, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Tyson Depina Interim Status Conference set for 3/28/2006 02:00 PM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (Lovett, Jarrett) (Entered: 01/11/2006) |
| 01/10/2006 | 90 | Defendant's Application for Necessary Investigative Servicesas to Mark Jadlowe filed in open court on 1/10/06. (Lovett, Jarrett) (Entered: 01/11/2006) |
| 01/10/2006 | 91 | Defendat's MOTION for Funds to Obtain Discovery as to Mark Jadlowe filed in open court on 1/10/06. (Lovett, Jarrett) (Entered: 01/11/2006) |

| 01/10/2006 | | Magistrate Judge Joyce London Alexander : Electronic ORDER entered: granting 90 Motion for Authorization of Services or Funds as to Mark Jadlowe (10); granting 91 Motion for Authorization of Services or Funds as to Mark Jadlowe (10) (Lovett, Jarrett) (Entered: 01/11/2006) |
|---|---|---|
| 01/12/2006 | 92 | STATUS REPORT by USA as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Tyson Depina (Connolly, William) (Entered: 01/12/2006) |
| 01/12/2006 | 93 | Joint MOTION for Excludable Delay from January 10, 2006 to March 28, 2006 as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Tyson Depinahy USA. (Connolly, William) (Entered: 01/12/2006) |
| 01/18/2006 | 94 | MOTION to Unseal Document as to Mark Jadloweby USA. (Zacks, Jennifer) (Entered: 01/18/2006) |
| 01/18/2006 | | Magistrate Judge Joyce London Alexander : Electronic ORDER entered granting 93 Motion to Exclude as to Kenny Amaral (1), Craig Andrade (2), Ethan Cohen (4), Tyson Depina (5), John Ferreira Jr. (6), Scott Gaylord (7), Vincent Gomes (8), Mark Jadlowe (10), Jessica Monteiro (11), Terrance Moore (12), Robert Rogers (13), Rodney Santos (14), John Sylvia (15) (Lovett, Jarrett) (Entered: 01/20/2006) |
| 01/20/2006 | | Judge Richard G. Stearns : Electronic ORDER entered granting 94 Motion to Unseal Documents as to Mark Jadlowe (10). (Johnson, Mary) (Entered: 01/23/2006) |
| 02/08/2006 | 104 | MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account as to Mark Jadloweby USA. (Attachments: # 1 Text of Proposed Order)(Zacks, Jennifer) (Entered: 02/08/2006) |
| 02/13/2006 | 105 | Opposition by Mark Jadlowe re 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account (Attachments: # (1) Exhibit Order Setting Conditions of Release) (Sultan, James) (Entered: 02/13/2006) |
| 02/14/2006 | 106 | Notice of Appearance filed by Atty. E. Peter Parker, 151 Merrimac St., Boston, MA 02114 regarding representation of Thomas Jadlowe ( Mark Jadlowe's father), concerning real property located at 30 Arch St., Dartmouth, MA. (Johnson, Mary) Modified on 2/15/2006 (Johnson, Mary). (Entered: 02/15/2006) |
| 02/22/2006 | 109 | MEMORANDUM in Opposition by Mark Jadlowe re 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account (Flaherty, Elaine) (Entered: 02/28/2006) |
| 02/28/2006 | 110 | REPLY TO RESPONSE to Motion by USA as to Mark Jadlowe re 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account (Attachments: # 1 Affidavit) (Zacks, Jennifer) (Entered: 02/28/2006) |
| 03/01/2006 | 111 | Judge Richard G. Stearns : ORDER entered. ORDER REFERRING MOTION as to Mark Jadlowe 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account filed by USA, for Report and Recommendation. (Johnson, Mary) (Entered: 03/01/2006) |
| 03/02/2006 | 113 | MOTION to Amend 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account filed by USA, as to Mark Jadloweby USA. (Attachments: # 1 Text of Proposed Order)(Zacks, Jennifer) (Entered: 03/02/2006) |
| 03/02/2006 | | Magistrate Judge Joyce London Alexander : Electronic ORDER entered: as to Mark Jadlowe, This court will hold a hearing on 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account as to Mark Jadlowe by USA, 105 Opposition to Motion filed by Mark Jadlowe, 109 Memorandum in Opposition filed by Mark Jadlowe, 110 Reply to Response filed by USA, on 3/7/06 @ 2:00 PM. All memoranda on law shall be submitted on Monday 3/6/06 by 12:00 PM. (Lovett, Jarrett) (Entered: 03/02/2006) |
| 03/02/2006 | | ELECTRONIC NOTICE OF HEARING ON MOTION as to Mark Jadlowe Motion Hearing set for 3/7/2006 02:00 PM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (Lovett, Jarrett) (Entered: 03/02/2006) |
| 03/03/2006 | 114 | NOTICE OF ATTORNEY APPEARANCE Jennifer Hay Zacks appearing for USA. (Zacks, Jennifer) (Entered: 03/03/2006) |
| 03/03/2006 | | Attorney update in case as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, |

| | | |
|---|---|---|
| | | Brandin Gonsalves, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina. Attorney Jennifer Hay Zacks for USA added. (Lovett, Jarrett) (Entered: 03/03/2006) |
| 03/06/2006 | 115 | MOTION for Leave to Reply and Incorporated Reply to 110 REPLY TO RESPONSE to Motion by USA as to Mark Jadlowe re 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account as to Mark Jadlowe. (Lovett, Jarrett) (Entered: 03/06/2006) |
| 03/07/2006 | 116 | MOTION to Withdraw Document 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account as to Mark Jadloweby USA. (Zacks, Jennifer) (Entered: 03/07/2006) |
| 03/07/2006 | | Magistrate Judge Joyce London Alexander : Electronic ORDER entered granting 116 MOTION to Withdraw Document 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account as to Mark Jadlowe by USA. (Lovett, Jarrett) (Entered: 03/09/2006) |
| 03/07/2006 | | Motions terminated as to Mark Jadlowe: 115 MOTION for Leave to File filed by Mark Jadlowe,, 113 MOTION to Amend 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account filed by USA, filed by USA,, 104 MOTION interlocutory sale of real property, with proceeds to be placed in CRIS account filed by USA,. (Lovett, Jarrett) (Entered: 03/09/2006) |
| 03/28/2006 | 121 | MOTION for Excludable Delay from March 28, 2006 to May 30, 2006 as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depinaby USA. (Connolly, William) (Entered: 03/28/2006) |
| 03/28/2006 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Joyce London Alexander :Interim Status Conference held on 3/28/2006, as to Kenny Amaral represented by Atty Fried, Craig Andrade represented by Atty Natola, Ethan Cohen represented by Atty Krupp, John Ferreira, Jr. represented by Atty Sheketoff, not present and covered by Atty Pastorok for this hearing, Mark Jadlowe represented by Atty Sultan, not present and covered by Atty Krupp for this hearing, Robert Rogers represented by Atty Krasnoo, John Sylvia represented by Atty Norris, Vincent Gomes represented by Atty Reddington, Rodney Santos represented by Atty Budreau, not present and covered by Atty Natola for this hearing, Jessica Monteiro represented by Atty Palmer, Terrance Moore represented by Atty Fienberg, not present and covered by Atty Krupp, Scott Gaylord represented by Atty Gormley, Javon Brown represented by Atty Camera, not present and covered by Atty Reddington, Tyson Depina represented by Atty Pastorok, AUSA Connolly for the Gov't: Ongoing review of discovery, Deft's request for 2 additional months to complete review of discovery, the Court orders a motion to be filed re: request for time to review discovery. Parties request a Final Status Conference, Final Status Conference set for 5/30/06 @ 2:00 PM, Dispositive Motions Due by 5/30/06. Gov't to file a Motion to Exclude Time. (Digital Recording) (Lovett, Jarrett) (Entered: 03/29/2006) |
| 03/28/2006 | | Set Deadlines as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina: Dispositive Motions due by 5/30/2006. (Lovett, Jarrett) (Entered: 03/29/2006) |
| 03/28/2006 | | ELECTRONIC NOTICE OF HEARING as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina Final Status Conference set for 5/30/2006 02:00 PM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (Lovett, Jarrett) (Entered: 03/29/2006) |
| 03/28/2006 | 122 | INTERIM STATUS CONFERENCE REPORT by USA as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina. (Lovett, Jarrett) (Entered: 03/29/2006) |
| 03/29/2006 | | Magistrate Judge Joyce London Alexander : Electronic ORDER entered granting 121 MOTION for Excludable Delay from March 28, 2006 to May 30, 2006 as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina by USA. "In addition to the above, counsel for the Government represented thta it needed to provide more discovery. Accordingly, motion allowed." (Lovett, Jarrett) (Entered: 03/29/2006) |

| 04/04/2006 | 125 | MOTION relief from restraining order and order of lis pendens (by Thomas Jadlowe) as to Mark Jadlowe, (Flaherty, Elaine) (Entered: 04/05/2006) |
|---|---|---|
| 04/18/2006 | 127 | Opposition by USA as to Mark Jadlowe re 125 MOTION relief from restraining order and order of lis pendens (Attachments: # 1 Appendix Appendix# 2 Appendix# 3 Appendix# 4 Appendix)(Zacks, Jennifer) (Entered: 04/18/2006) |
| 04/20/2006 | | Judge Richard G. Stearns : Electronic ORDER entered denying 125 Motion as to Mark Jadlowe (10): "Thomas Jadlowe's Motion for Partial Relief from Post-Indictment Restraining Order and Lis Pendens is DENIED. There is no showing that Thomas Jadlowe has a reasonable interest in the disputed property". R. G. STEARNS, USDJ. (Johnson, Mary) Modified on 4/20/2006 (Johnson, Mary). (Entered: 04/20/2006) |
| 04/20/2006 | 129 | REPLY TO RESPONSE to Motion by Mark Jadlowe re 125 MOTION relief from restraining order and order of lis pendens (Flaherty, Elaine) (Entered: 04/24/2006) |
| 04/26/2006 | 130 | MOTION for Reconsideration of Denial of Motion for Partial Relief From Post-Indictment Restraining Order and Lis Pendens, FILED BY THOMAS JADLOWE (not a defendant in this case). (Johnson, Mary) Modified on 4/28/2006 (Johnson, Mary). (Entered: 04/28/2006) |
| 05/10/2006 | 132 | Opposition by USA as to Mark Jadlowe re 130 MOTION for Reconsideration (Zacks, Jennifer) (Entered: 05/10/2006) |
| 05/12/2006 | 136 | Thomas Jadlowe's REPLY to Government's Opposition to Motion for Reconsideration, filed by Thomas Jadlowe (not a party to this action). (Johnson, Mary) Modified on 5/19/2006 (Johnson, Mary). (Entered: 05/19/2006) |
| 05/19/2006 | 135 | MOTION for Extension of Time to June 30, 2006 to File dispositive motions *Assented To* as to Mark Jadlowe. (Sultan, James) (Entered: 05/19/2006) |
| 05/23/2006 | | Magistrate Judge Joyce London Alexander : Electronic ORDER entered granting 135 Assented to MOTION for Extension of Time to June 30, 2006 to File dispositive motions as to Mark Jadlowe; granting [137] Assented to MOTION for Extension of Time to File Dispositive Motions as to Robert Rogers; granting [138] MOTION for Extension of Time to June 30, 2006 to File substantive motions as to Javon Brown (Lovett, Jarrett) (Entered: 05/24/2006) |
| 05/23/2006 | | Set/Reset Deadlines as to Mark Jadlowe, Robert Rogers, Javon Brown: Dispositive Motions due by 6/30/2006. (Lovett, Jarrett) (Entered: 05/24/2006) |
| 05/25/2006 | | ELECTRONIC NOTICE OF RESCHEDULING as to Kenny Amaral, Craig Andrade, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Ethan Cohen, Tyson Depina Final Status Conference reset for 5/31/2006 04:15 PM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (Lovett, Jarrett) (Entered: 05/25/2006) |
| 05/25/2006 | | Set/Reset Hearings as to Kenny Amaral, Craig Andrade, Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina: Final Status Conference set for 5/31/2006 04:15 PM in Courtroom 24 before Magistrate Judge Joyce London Alexander. (Lovett, Jarrett) (Entered: 05/25/2006) |
| 05/31/2006 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Joyce London Alexander :Final Status Conference as to Kenny Amaral, Craig Andrade. Ethan Cohen, John Ferreira, Jr, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, Terrance Moore, Scott Gaylord, Javon Brown, Tyson Depina held on 5/31/2006: AUSA Connolly for the Gov't, Atty Gormley for Scott Gaylord and covering for Atty's Fried, Feinberg, Krasnoo and Norris who represent Deft's Kenny Amaral, Terrance Moore, Robert Rogers and John Sylvia respectively; Atty Sultan for Mark Jadlowe and covering for Atty Reddington for Vincent Gomes, Atty Natola for Craig Andrade and covering for Atty's Sheketoff and Budreau who represent Deft's John Ferreira, Jr. and Rodney Santos respectively, Atty Camera for Javon Brown, Atty Krupp for Ethan Cohen, Atty Pastorok for Tyson Depina, Atty Palmer for Jessica Monteiro: Parties report the status of the case, parties request for further status conference denied, Gov't is to file a Final Status Report & a Joint Motion to Exclude Time, Dispositive Motions due by 6/30/06 as to all Deft's. Case is hereby returned to Judge Richard G. Stearns. (Digital Recording 4:35PM-4:40PM.) (Lovett, Jarrett) (Entered: 06/01/2006) |
| 05/31/2006 | | Case as to Kenny Amaral, Craig Andrade, Ethan Cohen. John Ferreira, Jr, Brandin Gonsalves, Mark Jadlowe, Robert Rogers, John Sylvia, Vincent Gomes, Rodney Santos, Jessica Monteiro, |

# EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2006 APR -4  A II: 29
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA    )
                            )
v.                          )          Criminal No. 05-10306-RGS
                            )
MARC JADLOWE                )

### THOMAS JADLOWE'S MOTION FOR PARTIAL
### RELIEF FROM POST-INDICTMENT RESTRAINING
### ORDER AND *LIS PENDENS*

Thomas Jadlowe, the owner of real property located at 30 Arch Street, Dartmouth
Massachusetts ("Arch Street" or the "Property"), hereby moves for modification of the
Post-Indictment Restraining Order entered by the court (the "Order") and temporary
relief from the *lis pendens* to permit a refinancing of the existing mortgage. The Property
consists of a main structure – a multi-bedroom house – that currently is undergoing
renovation and is unoccupied, and a separate structure that contains a studio apartment.
Mr. Jadlowe seeks relief from the restraining order and *lis pendens* to permit a
refinancing of the existing mortgage that would permit him to complete renovations and
occupy the main structure.

It is important to note that Mr. Jadlowe is *not* a defendant in this case. He is the
father of defendant Marc Jadlowe. Mr. Jadlowe is the sole owner of the Property. His
defendant-son owns no part of it. Mr. Jadlowe does not reside at the Property, has
absolutely no involvement in the conduct charged in the indictment and has no
knowledge of his defendant-son's alleged involvement. Mr. Jadlowe currently is paying
a high-rate mortgage on the Property. Because he cannot inhabit the main structure and
cannot live in the studio apartment which his defendant-son is required by the terms of

his pretrial release to occupy, Mr. Jadlowe not only is paying a mortgage, he is paying rent on an apartment he occupies elsewhere. If the court were to permit him to refinance the existing mortgage, he could complete renovations and occupy the main structure.

As grounds for this motion, Mr. Jadlowe states as follows.

### The Government's Forfeiture Claim Is Weak

The government's forfeiture claim is based on use of the Property for the temporary storage of a quantity of cocaine on a single day, November 4, 2005. As a result of a Title III Wiretap, the Property was under surveillance on that date because agents expected that cocaine would be delivered there. Surveillance agents watched a vehicle containing the cocaine pull into the garage. Ninety minutes later, the agents seized the cocaine.

Mr. Jadlowe was not present. There is no evidence that he was aware that his son allegedly permitted others to fleetingly store cocaine in the garage of the Property on November 4, 2005. Mr. Jadlowe did not live at the Property then and was not seen there during comprehensive surveillance culminating with the cocaine delivery and seizure. The government has no evidence that he was involved in drug dealing.

Nor does it have evidence that the Property was purchased with drug proceeds. Mr. Jadlowe acquired the Property in February 2001, nearly five years before the government arrested Marc Jadlowe on November 4, 2005. Mr. Jadlowe has a strong defense to forfeiture and intends to assert it vigorously.

### The Restraining Order

After successfully obtaining a *lis pendens* preventing the sale of the Property, the government moved *ex parte* for a comprehensive restraining order it asserted was

2

necessary to preserve the availability of the Property. Pursuant to that motion, the court

signed the Post-Indictment Restraining Order the government had drafted. *See* December

21, 2005 Order. The Restraining Order prohibits Mr. Jadlowe from, among other things,

encumbering the Property. *Id.* at 3-4. It also affirmatively obligates Mr. Jadlowe to

maintain the condition of the Property, which specifically includes the payment of all

mortgages and other costs associated with the Property. *Id.* at 4.

Mr. Jadlowe has standing in this criminal forfeiture proceeding to seek relief from

the *ex parte* restraining order. *See United States v. Real Property in Waterboro*, 64 F.3d

752, 755-56 (1ˢᵗ Cir. 1995) ("under § 853(e), third parties claiming an interest in

restrained or potentially restrainable property may 'participat[e]' in the associated

restraining order proceedings"). The court noted that § 853(e) constituted an exception

to the general prohibition on third-party intervention in criminal forfeiture proceedings

and reasoned that such an exception was necessary to comply with Due Process:

> This exception to the bar on intervention may reflect due process
> concerns. Section 853(e) presents a special problem for third
> parties, who face not only the potential forfeiture of property in
> which they claim an interest, but also immediate restraints upon
> property that may be in their control. A restraining order directed
> at third parties is "strong medicine," ... whether it is entered before
> or after the indictment.

64 F.3d at 755.

### Argument

The court should grant the relief Mr. Jadlowe seeks here because Mr. Jadlowe is

motivated to complete renovations of, and occupy, the main structure of the Property. He

intends to assert his ownership rights and to fight vigorously the government's efforts to

take his home. For the reasons set forth below, there is no chance that he will abandon,

waste or permit the degradation in value of the Property – the government's rationale for

3

seeking the restraining order. To the contrary, his goal is to increase its value by making
it habitable and occupying it.

To date, Mr. Jadlowe has demonstrated that he is absolutely committed to
completing renovations and occupying the Property. His resolve has been tested again
and again, and he has met every challenge. When town officials issued a stop order, he
retained counsel and successfully litigated an appeal in the Superior Court which resulted
in a judgment in his favor on October 30, 2003 in the matter of *Jadlowe v. Town of
Dartmouth*, Bristol Superior Court Civil No. 2002-01048. The town subsequently issued
a special permit that allowed the renovations to continue.

That decision by the town was challenged by an abutter. Mr. Jadlowe did not
give up. He again retained counsel and presently is litigating that matter. *See Frates v.
Jadlowe*, Bristol Superior Court Civil No. 2004-01358. Mr. Jadlowe expects to prevail at
or before trial, currently scheduled for July 21, 2006. He also has brought a federal civil
rights action in this court, again through retained counsel. *See* Civil No. 05-0516-LTS,
*Jadlowe v. The Town of Dartmouth et al*.

Mr. Jadlowe has retained undersigned counsel to fight the forfeiture efforts in this
case. In addition to the costs of preparing this motion, Mr. Jadlowe has gone to
considerable expense to oppose an extraordinary motion by the government to force an
interlocutory sale of the Property, deposit the proceeds in an escrow fund and litigate Mr.
Jadlowe's entitlement to the proceeds once the criminal forfeiture action was resolved
and his claim to the Property could be litigated. On the day a hearing on that motion was
to be heard, the government withdrew it.

4

preponderance of the evidence.    See Federal Rule of Criminal Procedure 32.2(c); 21 U.S.C. §853(n). Contrary to his assertions in his motion, Thomas Jadlowe would be unable to make such a showing. Not only do the records described above demonstrate that any legal interest that Thomas Jadlowe had in the Arch Street Property ended in 2003, but Thomas Jadlowe concedes in his motion that he does not live at the main unit of the Arch Street Property and that it is not habitable.    See Motion at 1-2. On the other hand, Mark Jadlowe, as noted in the United States' filings in support of a restraining order, was seen on a daily basis at the Arch Street Property during the course of the criminal investigation. In addition, the history of suspicious transfers described above strongly suggests a concerted effort to conceal the ownership of the Arch Street Property by Mark Jadlowe and vitiates any claim by Thomas Jadlowe to be the owner of the Arch Street Property. Since Thomas Jadlowe would not be able to prevent the Arch Street Property from being criminally forfeited to the United States, he should not be able to reduce the value available for forfeiture by reducing the equity in the Arch Street Property.

**CONCLUSION**

WHEREFORE, the United States moves that this Court deny Thomas Jadlowe's Motion for Partial Relief from the Post-Indictment Restraining Order and *Lis Pendens*.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney,

/s/Jennifer H. Zacks
WILLIAM CONNOLLY
JENNIFER H. ZACKS
Assistant U.S. Attorneys
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Date: April _18, 2006

**CERTIFICATE OF SERVICE**

I, Jennifer H. Zacks, Assistant U.S. Attorney, hereby certify that the foregoing document has been filed through the Electronic Court Filing system will be sent electronically to the registered parties as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/Jennifer H. Zacks
JENNIFER H. ZACKS
Assistant U.S. Attorney

Date: April 18, 2006

6

# EXHIBIT K

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,        )
                                 )
          v.                     )
                                 )    Criminal No. 05-10306-RGS
                                 )
MARK JADLOWE, a/k/a              )
"UNCLE MARK" et al.,             )
          Defendants.            )

## UNITED STATES' OPPOSITION TO THOMAS JADLOWE'S MOTION FOR PARTIAL RELIEF FROM POST-INDICTMENT RESTRAINING ORDER AND *LIS PENDENS*

The United States of America, by and through its attorney,

Michael J. Sullivan, United States Attorney for the District of

Massachusetts, hereby opposes Thomas Jadlowe's motion for relief

from the post-indictment restraining order and *Lis Pendens* that the

United States has obtained to safeguard its interest in the real

property located at 30 Arch Street, Dartmouth, MA ("the Arch Street

Property"). This motion, which contemplates refinancing the real

property located at Arch Street and taking approximately an

additional $20,000 in equity out of the Arch Street Property should

be denied for the following reasons. First, Mark Jadlowe, one of

the criminal defendants in this case, is the owner of the real

property and Thomas Jadlowe lacks any legal interest in the Arch

Street Property. Second, Thomas Jadlowe should not be permitted to

take any additional equity out of the Arch Street Property.

Whatever equity remains in the property should be preserved for

forfeiture to the United States. Finally, contrary to Thomas

Jadlowe's assertions, he is unlikely to prevail in ancillary

1

forfeiture proceedings.

**1.    Thomas Jadlowe has no legal interest in the Arch Street
Property**.   As an initial matter, the motion should be denied
because a review of the records relating to the Arch Street
Property's title demonstrates that Mark Jadlowe is the owner of the
Arch Street Property.  Thomas Jadlowe has no current legal interest
in the Arch Street Property and, therefore, lacks standing to
intervene in this criminal proceeding.

The history of the Arch Street Property shows a long series of
suspicious transfers, many for nominal amounts, back and forth
between members of the Jadlowe family.   On June 30, 1999, Mark
Jadlowe conveyed the Arch Street Property, by quitclaim deed and
for nominal consideration, to Manuel Oliviera, Mark Jadlowe's
grandfather.  See Exhibit A.  On that same date, June 30, 1999, a
second quitclaim deed was filed in which Manuel Oliviera granted
himself a life estate in the Arch Street Property and conveyed the
remainder back to Mark Jadlowe.  See Exhibit B.  On September 12,
2000, Manuel Oliviera transferred his interest, that is, a life
estate, in the Arch Street Property to Thomas Jadlowe, father of
Mark Jadlowe and  former son-in-law of Manuel Oliviera, for the sum
of $1.00.   See Exhibit C.  On February 2, 2001, Thomas Jadlowe
conveyed his interest, the life estate he had received from Manuel
Oliviera, back to Manuel Oliveira for the sum of $1.00.    See
Exhibit D.  On March 16, 2001, Manuel Oliviera once again conveyed

2

his interest in the Arch Street Property back to Thomas Jadlowe, this time for $160,000. See Exhibit E. Under well-established principles of property law, Manuel Oliviera could transfer to Thomas Jadlowe only that interest that he held at the time — in other words, a life estate for the life of Manuel Oliviera. Cf. Bongaards v. Millen, 440 Mass. 10, 793 N.E.2d 335, O'Neill v. Sullivan, 256 Mass. 76, 152 N.E. 341 (Mass. 1926);

Manuel Oliviera died on November 30, 2003. At that time, Thomas Jadlowe's interest in the Arch Street Property ceased to exist, and title to the property passed to Mark Jadlowe, of the remainder. Therefore, since Thomas Jadlowe lacks any current legal interest in the Arch Street Property, he should not be permitted to seek any relief in this criminal proceeding.

**2.    The equity in the Arch Street Property should be preserved for criminal forfeiture to the United States**. By his motion, Thomas Jadlowe seeks to extract approximately $20,000 in equity from the Arch Street Property. Allowing this motion would lessen the value left for forfeiture to the United States. A review of the records relating to the Arch Street Property's title show two outstanding mortgages totaling approximately $298,000: a mortgage for approximately $128,000 held by Meritage Mortgage Corporation[1] and a mortgage for approximately $170,000 held by Ameriquest Mortgage

---

[1]    No release has been filed with the Registry of Deeds indicating that the Meritage loan has been paid off.

3

Company. According to the Town of Dartmouth tax assessor's website, the current assessed value of the Arch Street Property is $235,200. Given these outstanding mortgages, there appears to be relatively little equity available for forfeiture to the United States. Allowing Thomas Jadlowe to take out a mortgage for an additional $20,000 would leave even less equity available for forfeiture. He should not be permitted to do so by this Court.

**3.** **Thomas Jadlowe would not prevail in ancillary criminal forfeiture proceedings.** In a criminal drug forfeiture proceeding, a property is subject to forfeiture pursuant to 21 U.S.C. §853(a)(2) if it is "property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, [a federal criminal drug] violation." Here, it is undisputed that the Arch Street Property was used to facilitate illegal drug trafficking, since 10 kilograms of cocaine were delivered to the Arch Street Property on November 4, 2005 and seized by law enforcement officers.

Given the uncontested fact that the Arch Street Property was used for illegal drug dealing, under the relevant criminal statutes, Thomas Jadlowe's claimed lack of knowledge of this drug dealing is irrelevant. The issue in ancillary criminal forfeiture proceedings would be whether Thomas Jadlowe, rather than Mark Jadlowe, was the true owner of the Arch Street Property, a showing that it would be Thomas Jadlowe's burden to prove by a

4

preponderance of the evidence.   See Federal Rule of Criminal Procedure 32.2(c); 21 U.S.C. §853(n).  Contrary to his assertions in his motion, Thomas Jadlowe would be unable to make such a showing. Not only do the records described above demonstrate that any legal interest that Thomas Jadlowe had in the Arch Street Property ended in 2003, but Thomas Jadlowe concedes in his motion that he does not live at the main unit of the Arch Street Property and that it is not habitable.   See Motion at 1-2.  On the other hand, Mark Jadlowe, as noted in the United States' filings in support of a restraining order, was seen on a daily basis at the Arch Street Property during the course of the criminal investigation.   In addition, the history of suspicious transfers described above strongly suggests a concerted effort to conceal the ownership of the Arch Street Property by Mark Jadlowe and vitiates any claim by Thomas Jadlowe to be the owner of the Arch Street Property.  Since Thomas Jadlowe would not be able to prevent the Arch Street Property from being criminally forfeited to the United States, he should not be able to reduce the value available for forfeiture by reducing the equity in the Arch Street Property.

5

## **CONCLUSION**

WHEREFORE, the United States moves that this Court deny Thomas

Jadlowe's Motion for Partial Relief from the Post-Indictment

Restraining Order and *Lis Pendens*.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney,

/s/Jennifer H. Zacks
WILLIAM CONNOLLY
JENNIFER H. ZACKS
Assistant U.S. Attorneys
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Date: April _18, 2006

## **CERTIFICATE OF SERVICE**

I, Jennifer H. Zacks, Assistant U.S. Attorney, hereby certify
that the foregoing document has been filed through the Electronic
Court Filing system will be sent electronically to the registered
parties as identified on the Notice of Electronic Filing and paper
copies will be sent to those indicated as non-registered
participants.

/s/Jennifer H. Zacks
JENNIFER H. ZACKS
Assistant U.S. Attorney

Date: April 18, 2006

6

# EXHIBIT L

FILED
UNITED STATES DISTRICT COURT CLERKS OFFICE
FOR THE DISTRICT OF MASSACHUSETTS

Docket no. C.A. NO. 05-10516 LTS

THOMAS JAMES JADLOWE

DISTRICT COURT
DISTRICT OF MASS.

V.

THE TOWN OF DARTMOUTH
LEONARD GONSALVES
MICHAEL J. GAGNE'
DONALD A. PERRY
SCOTT E. SILVIA
JOEL S. REED
JEANNE E. LENTINI



**EXHIBIT**
*Jadlowe 2*
*6-27-06*

## PLAINTIFF'S RESPONSE TO THE MUNICIPAL DEFENDANT'S INTERROGATORIES

Now come the municipal defendants and hereby propound the following

Interrogatories to plaintiff Thomas James Jadlowe, to be answered under oath within 30

days of service.

### INTERROGATORY NO. 1

Please state whether you contend that you held an interest in the property located

at 30 Arch Street in the Town of Dartmouth at any time between March 19, 2002 and

November 19, 2004. If the answer is in the affirmative, please state:

a.    The dates on which you held each interest you contend you held;

I have owned the property continuously since March 16, 2001.

b.    The nature of each such interest;

I own the property in fee subject to a mortgage in the Ameriquest
Mortgage Company dated May 1, 2003 and a forfeiture claim by
the United States Government.

c.    From whom you obtained each such interest; and

> Manuel C. Oliveira

d.    The instrument by which you obtained each such interest, including a
copy of same with your answer.

> Deed dated March 16, 2001 recorded at the Bristol County Registry
>
> of Deeds at book 4926 page 25, see page 11 of the production.

## INTERROGATORY NO. 2

Please identify any injury, damage, or other loss which you attribute to the issuance of a
cease and desist order by the Dartmouth Building Commissioner on March 19, 2002,
specifying in your answer the amount of economic harm, if any, that you attribute to each
such injury, damage or loss.

> See the damage summary on page 56 of the production; plus I have
> suffered severe emotional distress as a result of the cease and desist
> orders by the Town of Dartmouth.

## INTERROGATORY NO. 3

Please identify any injury, damage, or other loss which you attribute to the issuance of a
cease and desist order by the Dartmouth Building Commissioner on November 24, 2003,
specifying in your answer the amount of economic harm, if any, that you attribute to each
such injury, damage, or loss.

> See my answer to Question 2

## INTERROGATORY NO. 4

Please state whether you contend that the property at 30 Arch Street is the subject of a so-
called "New Bedford Trust," and, if your answer is in the affirmative, please define the
term "New Bedford Trust."

> Objection, the Plaintiff is not a lawyer and the answer calls for a legal
> description, but subject to that objection the Plaintiff says see the letter
> from Attorney Mathieu page 55 of the production and see the deed from
> my father in law to himself page 7 of the production, my father in law
> deeded a life estate to himself with the right to transfer the remainder
> interest in his life time.

Signed and sealed under the pains and penalties of perjury but subject to the applicable
Rules of Evidence as to their admission into evidence at the time of trial.

_Thomas J Jadlowe_     _10/25/06_
Party signature                                    date

2

As to Objections:

_____    _____
Donald J. Fleming, Esq.                              date

1of 1                                 JADLOWE EXPENSE DAMAGES

| # | item | date | frequency | amount | total |
|---|------|------|-----------|--------|-------|
| 1 | Real estate insurance | 2002 | 1 | $ 1,764.00 | |
| 2 | Real estate insurance | 2003 | 1 | $ 1,764.00 | |
| 3 | Real estate insurance | 2004 | 1 | $ 1,764.00 | |
| 4 | Real estate insurance | 2005 | 1 | $ 1,764.00 | |
| 5 | Real estate insurance | 2006 | 1 | $ 1,764.00 | $ 8,820.00 |
| | | | | | |
| | Mortgage Payments | date | frequency | amount | total |
| 6 | | 2002 | 12 | $ 1,122.35 | $ 13,468.20 |
| 7 | | 2003 | 3 | $ 1,122.35 | $ 3,367.05 |
| 8 | | 2003 | 9 | $ 1,129.88 | $ 10,168.92 |
| 9 | | 2004 | 12 | $ 1,129.88 | $ 13,558.56 |
| 10 | | 2005 | 5 | $ 1,129.88 | $ 5,649.40 |
| 11 | | 2005 | 7 | $ 1,285.67 | $ 8,999.69 |
| 12 | | 2006 | 6 | $ 1,401.67 | $ 8,410.02 |
| 13 | | 2006 | 6 | $ 1,505.02 | $ 9,030.12 |
| | | | | | |
| | Item | date | frequency | amount | total |
| 14 | Real estate taxes | 2002 | 1 | $ 1,827.34 | |
| 15 | | 2003 | 1 | $ 1,516.09 | |
| 16 | | 2004 | 1 | $ 514.84 | |
| 17 | | 2005 | 1 | $ 1,636.91 | |
| 18 | | 2006 | 1 | $ 1,669.53 | $ 7,164.71 |
| | | | | | |
| | item | date | frequency | amount | total |
| 19 | construction siding | | | $ 9,118.18 | |
| 20 | construction plumbing | | | $ 6,351.00 | |
| 21 | construction plumbing | | | $ 4,500.00 | |
| 22 | construction Harvey industries | | | | $ 19,969.18 |
| | | | | | |
| | item | date | frequency | amount | total |
| 23 | Rent in Fairhaven | 2002 | 12 | $ 400.00 | $ 4,800.00 |
| 24 | Rent in Fairhaven | 2003 | 12 | $ 400.00 | $ 4,800.00 |
| 25 | Rent in Fairhaven | 2004 | 12 | $ 400.00 | $ 4,800.00 |
| 26 | Rent in Fairhaven | 2005 | 12 | $ 400.00 | $ 4,800.00 |
| 27 | Rent in Fairhaven | 2006 | 10 | $ 500.00 | $ 5,000.00 |
| | | | | | |
| | item | date | frequency | amount | total |
| | | | | | $ 132,805.85 |



EXHIBIT 13
Jadlowe
10-27-06 CP

5-6